**Jean KNAFEL,**
**Plaintiff–Appellee/Cross–Appellant,**

v.

**PEPSI–COLA BOTTLERS OF AKRON, INC.,**
**Defendant–Appellant/Cross–Appellee;**

**General Cinema Corporation; Stanley Levin; James Davis,**
**Defendants–Appellees.**

**Nos. 89–3208, 89–3209.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 26, 1990.

Decided March 27, 1990.

Janet I. Stich, Timothy A. Shimko (argued), Shimko, King & Stich, Cleveland, Ohio, for Jean Knafel.

Lester W. Armstrong, Hahn, Loeser & Parks, Cleveland, Ohio, Gregory L. Hammond (argued), Hammond & Associates, Akron, Ohio, for Pepsi–Cola Bottlers and defendants-appellees.

Before BOGGS and NORRIS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

BOGGS, Circuit Judge.

Jean Knafel sued Pepsi–Cola Bottlers of Akron, Inc. (Pepsi), General Cinema Corporation (GCC), Stanley Levin, and James Davis for a discriminatory discharge, in violation of 42 U.S.C. § 2000e (Title VII). Knafel claimed that her employer had fired her in retaliation for her having filed a civil rights claim (the "EEOC charge") against the employer. Knafel further alleged a violation of Ohio Revised Code § 4123.90, claiming that she was discharged in retaliation for her having filed workers' compensation claims. Knafel also sued for intentional infliction of emotional distress. The district court rendered a judgment for Knafel and against Pepsi on the Title VII claim, dismissed the Title VII claims against all other defendants, and granted the defendants' motion for summary judgment as to the other claims. Pepsi appeals the Title VII judgment, and Knafel cross-appeals the dismissal of the state law claims. For the reasons that follow, we affirm the Title VII judgment and reverse the dismissal of the state law claims.

I

A

This case has a long procedural history. Knafel began working for Pepsi on April 3, 1978. On September 27, 1982, Knafel and

three co-workers filed discrimination claims with the state civil rights commission, alleging that Pepsi engaged in sex discrimination. On August 24, 1983, Knafel and her three co-workers first sued Pepsi in federal district court. On November 7, 1984, that case (No. C83–3534A) was settled in contemplation of a forthcoming consent decree,[1] which provided in part that Pepsi would not retaliate against the plaintiffs for their participation in the suit. On September 18, 1985, while Knafel was on sick leave, she was terminated. After her termination, Knafel took Pepsi to arbitration under the collective bargaining agreement, where the arbitrator determined that Pepsi had fired Knafel for just cause, based on her absenteeism. Knafel then filed this suit.

On August 11, 1986, the defendants moved for summary judgment, which the district court granted on all claims except the Title VII claim against Pepsi only. On March 24, 1988, a panel of this court heard an interlocutory appeal from Knafel's suit. The panel dismissed the appeal of a partial grant of summary judgment on the Title VII claim for lack of jurisdiction, because there had been no final judgment, and vacated the district court's certification of its grant of summary judgment on the state law claims for failure to explain the basis for the certification under Federal Rule of Civil Procedure 54(b). *Knafel v. Pepsi Cola Bottlers of Akron, Inc.,* 850 F.2d 1155 (6th Cir.1988). The district court then denied Pepsi's renewed motion for summary judgment.

On December 19, 1988, the district court began a bench trial on the Title VII claim against Pepsi.[2] On December 22, 1988, the district court, finding retaliatory employment actions by Pepsi, rendered its decision in favor of Knafel. The court deferred a decision on the issue of damages until January 31, 1989, when it ordered $23,354.70 in back pay and benefits and reinstatement.

**B**

Knafel worked as an inspector on the bottling line. She claims that during her tenure at Pepsi, her employer engaged in sex discrimination and unlawful retaliation. After a newspaper article publicizing the February 28, 1985 consent decree appeared, Stanley Levin, the vice president and general manager of Pepsi, addressed the employees. Knafel claims that Levin made light of Knafel's settlement, degraded her, and intended to persuade the employees to ostracize her. Knafel also claims that James Davis, the production manager at Pepsi, told a male employee that he was "out to get" her.

Knafel injured her back on the job in October 1982. She was diagnosed as suffering from lumbrosacral strain and lumbar disc disease. Knafel's treating physician informed James Davis that Knafel could do her inspection work and other light duty work but could not perform any heavy work without aggravating her back condition. In September 1983, Knafel's treating physician told Pepsi's company doctor, Dr. Senne, that Knafel could return to work if her lifting or pushing was limited to 20–25 pounds and if she had an opportunity to sit after periods of standing. The district court found that Pepsi, despite these medical warnings, assigned Knafel work that aggravated her back pain and caused absenteeism, thereby building its case for her eventual dismissal.

Pepsi also treated Knafel differently from how it treated other employees. Knafel, but not others, had to get approval before going to the restroom. She was required to perform clean-up tasks that less senior employees did not have to perform. Knafel was singled out to perform shoveling and mopping that exacerbated her back condition. The district court found that these work assignments were designed to impress upon Knafel's co-work-

---

1. The parties entered into the consent decree on February 28, 1985.

2. On June 9, 1987, the district court granted the other defendants' motion for summary judg-

ment and dismissed them from the Title VII portion of the suit. The court also dismissed Knafel's state tort claims.

ers that it would be counterproductive to level EEOC charges against Pepsi.

In September 1984, Pepsi issued Knafel a written reprimand for absenteeism. After a June 14, 1985 absence, Knafel received a second reprimand, which resulted in a three-day suspension. Levin claimed that Knafel's attendance was the worst in the production department. Knafel's back pain kept her out of work from the date of her suspension until September 17, 1985, when she was terminated. During this period, Knafel collected workers' compensation.

After Knafel grieved her discharge, the arbitrator determined that absenteeism was a just cause for her termination; he deferred, however, any findings of retribution or discrimination to the district court. The district court found that excessive absenteeism was a pretextual reason for Knafel's dismissal.

## II

Pepsi makes five arguments as to why the district court erred by granting judgment in favor of Knafel on her Title VII claim. Pepsi also contends that the district court erred in its calculation of Knafel's appropriate back pay award. Knafel argues that defendants GCC, Levin, and Davis should not have been dismissed from the Title VII portion of the suit. We consider the arguments in order.

## A

Pepsi first asserts that the district court should have granted its motion for summary judgment on the Title VII claim. Pepsi argued to the district court, and renews the argument on appeal, that the proceedings in case no. C83–3534A have preclusive effect over Knafel's Title VII claim. Knafel had two alternative potential remedies for her claim: the provisions of Title VII forbidding retaliation by an employer or the anti-retaliation provision of the district court's consent decree in C83–3534A. Pepsi argues that Knafel should have been barred from pursuing her Title VII claim because she previously had elected her equitable remedy by seeking contempt sanctions under the consent decree entered in

C83–3534A. Knafel voluntarily dismissed with prejudice her contempt claims against Pepsi; Pepsi argues that the dismissal is *res judicata* as to Knafel's Title VII claim.

In a September 19, 1986 order, the district court stated that:

the eventual fact findings in the contempt proceeding may have collateral estoppel effect on the parties in this case. For sake of judicial economy, therefore, the Court will hold matters in the present case in abeyance until the determination of the contempt proceeding, absent any withdrawal of that contempt proceeding by the plaintiff.

The court then granted Knafel's motion to dismiss with prejudice the contempt proceeding in C83–3534A. In its April 23, 1987 opinion, therefore, the district court concluded that "it would be unjust to place the plaintiff in a 'catch 22' position by now holding that her present Title VII claim is barred because her exclusive remedy for the alleged retaliatory conduct lay in pursuing the very contempt proceeding which she has now dismissed with prejudice." The court was also influenced by the fact that the contempt proceedings were dismissed before any factual findings were made.

Pepsi argues that the district court rendered meaningless the phrase "with prejudice," in that a voluntary dismissal with prejudice should have preclusive effect, whether or not accompanied by any findings of fact. Pepsi asserts that Rule 41, Fed.R.Civ.P., provides that any order for dismissal not covered by that rule (except dismissals without prejudice, for lack of jurisdiction, for improper venue, or for failure to join a party), including the order dismissing the contempt charge, operates as an adjudication on the merits. An adjudication on the merits has collateral estoppel effect.

■ In support of its argument, Pepsi emphasizes that Knafel's claims in the contempt proceeding were identical to the claims she made at the trial. Pepsi argues that it was forced to defend the same law-

suit twice, despite Knafel's decision to dismiss with prejudice the first proceeding.

Pepsi's reliance on Fed.R.Civ.P. 41 is misplaced. Rule 41 concerns only dismissals of *actions*. Knafel's was a dismissal of a *motion*—to show cause why Pepsi was not in contempt of the consent decree. The *action* was the original case, C83–3534A, which was resolved by the entry of the consent decree. The dismissal was a dismissal of Knafel's motion with prejudice against filing any further contempt motions. The dismissal was voluntary and not predicated upon a decision on the merits.

■ The consent decree did not prevent Knafel from pursuing independent statutory claims arising after the issuance of the consent decree. This lawsuit was based on Pepsi's violation of Title VII's anti-retaliatory provisions, distinct from the provisions of the consent decree, and concerned issues never litigated in any previous action. We agree with the district court that it would be unjust to hold that Knafel's Title VII claim is barred since she was persuaded by the court to dismiss the contempt proceeding which Pepsi claims became her exclusive remedy once she elected it. We therefore reject Pepsi's *res judicata* argument.

■ Pepsi's second argument is that the district court erred by holding that Pepsi did not articulate a legitimate, nondiscriminatory reason for Knafel's disparate treatment. Pepsi relies on its statement of the facts as evidence that it did not assign Knafel tasks different from those assigned other employees. Pepsi does not deny that the district court found its reason to be illegitimate.

We agree with the district court that Pepsi failed to meet its burden of production because no reason it proffered was legitimate. Pepsi had no credible business justification for its behavior. The only reason Pepsi had for assigning Knafel work not assigned to other employees was to aggravate her back condition so that Pepsi could rid itself of her.

The Supreme Court has held that, in order for an employer to meet its burden of production, its evidence must raise "a genuine issue of material fact as to whether it discriminated against the plaintiff." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). Pepsi was obligated "clearly [to] set forth, through the introduction of admissible evidence," the reasons for Knafel's treatment. *Id.* at 255, 101 S.Ct. at 1094. Its explanation must be legally sufficient to support a judgment for Pepsi. *Ibid.* We agree with the district court that Pepsi failed to articulate any valid justification for its disparate treatment of Knafel. We hold that the district court conducted the proper analysis under *Burdine* and correctly concluded that Pepsi failed to meet its burden of producing a legitimate business reason for assigning unfairly burdensome tasks to Knafel.

■ Pepsi's third argument is that the district court erred by concluding that Pepsi treated Knafel differently from her co-workers. Pepsi asserts that the court chose to credit Knafel's witnesses, who testified that Knafel was singled out for poor treatment, over Pepsi's witnesses, who denied that Knafel was treated differently. Pepsi claims that the court erred by not disclosing its credibility determinations; for this court to defer to the trial court in the absence of any articulated assessments of credibility would go beyond the demands of Federal Rule of Civil Procedure 52(a).[3]

Pepsi also objects to the way in which the district court used the testimony of one of Pepsi's witnesses, Paul Ward, against Pepsi. The court relied on Ward's testimony that his back ailment was treated gingerly by Pepsi, in contrast to the treatment Knafel received, but the court excluded certain documentary evidence relating to Ward's testimony.

Nothing in Fed.R.Civ.P. 52 requires a court to specify its determinations of wit-

---

**3.** Fed.R.Civ.P. 52(a) states that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

ness credibility. These determinations may be inferred from the court's findings of fact, the basis for which is evident from a review of record. The district court's findings mention that the court did not believe Pepsi's arguments, and the court implies that it found that Knafel's witnesses were more credible than Pepsi's. Furthermore, the court's refusal to admit the documentary evidence does not alter the fact that the trial transcript is replete with other evidence indicating that Ward received better treatment than Knafel. We hold that the district court did not err in its assessment of the evidence.

■ Fourth, Pepsi argues that the district court erred by concluding that Pepsi's allegedly disparate treatment of Knafel caused the deterioration of her back condition. Pepsi asserts that Knafel suffered from a degenerative back condition and that her back would have caused her increasing pain regardless of whether she was given light or heavy work projects. Furthermore, Pepsi argues that the court should not have blamed Pepsi for Knafel's bad back (which caused her absenteeism and her discharge), because none of the events before February 28, 1985 (the date the consent decree was entered) was actionable. The court was able to rely only on the work assigned to Knafel between February 28, 1985 and June 20, 1985 (Knafel's last day of work) as the cause of her back ailment. Pepsi claims that it was clearly erroneous for the district court to find that these four months of assignments contributed to Knafel's ailment more than did the previous six years of work assignments and her degenerative condition combined.

■ The district court did recognize that events occurring before the issuance of the consent decree were not actionable. Evidence of Pepsi's actions during that earlier period was admissible, however, to show a continuing pattern and practice of discrimination against Knafel. It was the continuing pattern of purposeful discrimination which exposed the true and continuous motivation behind Knafel's work assignments. Pepsi's argument, therefore, is not well taken.

Pepsi's fifth argument is that the district court erred by concluding that Pepsi's "no-fault absenteeism" policy discriminated unlawfully against Knafel. Pepsi charged absences from work against employees' records regardless of the causes of the absences. Pepsi claims that it fired Knafel because she had the worst rate of absenteeism at the Akron plant. The district court found that Pepsi's no-fault absenteeism policy allowed Pepsi to penalize Knafel for absences that Pepsi caused; in so finding, the district court considered Pepsi's failure to distinguish between workers' compensation-related absences and other absences to be evidence of retaliatory motive.

We agree with the district court that Pepsi's absenteeism policy operated in a discriminatory way. It was not the mere existence of a no-fault absenteeism policy, but the application of that policy to events caused by Pepsi's discrimination, that led the district court to find retaliatory motive. When her absenteeism record is corrected to reflect only absences not due to her discrimination-aggravated injury, Knafel's record is in line with that of most employees. The district court's finding of unlawful discrimination rested not on the absenteeism policy, but rather on the way Pepsi applied the policy to punish Knafel for a situation it created. Under these circumstances, the district court's conclusion was not erroneous.

### B

■ Pepsi next contends that the district court erred in its calculation of Knafel's appropriate back pay award. Pepsi argues that because Knafel's back condition could have degenerated even in the absence of heavy work assignments and because Knafel suffered from back pain that began long before she exercised her Title VII rights, the compensation that the district court awarded does not fall within the scope of Title VII liability. Pepsi also claims that the court relied on events occurring before February 28, 1985, the date the consent decree was entered, in blaming Pepsi for Knafel's injuries.

Knafel argued to the district court that an appropriate remedy would include back pay, prejudgment interest, punitive damages, reinstatement or front pay, and attorney fees and costs. The district court awarded Knafel back pay in the amount of $20,571.20 for the period from June 1985 to May 1986; denied back pay for the period from June 1986 (the date after which Pepsi could not, to a medical certainty, be held accountable for Knafel's back condition) to January 15, 1989 (the date on which Knafel would have been fit to return to work); ordered Pepsi to pay $1558 to Knafel's union pension plan and $1225.50 to Knafel as reimbursement for insurance premium payments; awarded prejudgment interest in the amount of eight percent per annum; denied the request for punitive damages as contrary to the law of this Circuit; and directed reinstatement, in lieu of front pay, noting that the primary causes of Knafel's problems, James Davis and Stan Levin, are no longer at the Akron plant. The court deferred its determination of an appropriate award for fees and costs until the attorneys submitted final accountings. Pepsi was ordered to pay a total of $23,354.70, plus interest from June 1986 to January 1989.

The only element of the total award which Pepsi protests is the back pay award, to which Pepsi has essentially two objections. Pepsi argues that the court awarded back pay for incorrect time periods. From June to September 1985, about one third of the back pay period, Knafel was still employed by Pepsi. During this period, Knafel received workers' compensation payments. Pepsi argues that this compensation must be offset against an award of back pay. The district court rejected that argument, finding no distinction between workers' compensation and, for example, unemployment benefits; both are collateral sources, not properly offset against an award of back pay. Pepsi argues that there is an important distinction: unemployment benefits are paid when the employee is able to work, while workers' compensation payments are made only when the employee cannot work.

We are not persuaded by Pepsi's arguments. The district court refused to toll a back pay award for the time during which Knafel was unable to work because her inability to work was caused by Pepsi. Trial courts have discretion to fashion remedies to make Title VII victims whole. Given the overwhelming evidence indicating that Pepsi exacerbated Knafel's back condition by assigning burdensome work designed to injure her, the district court's award was appropriate. Furthermore, the court correctly applied the law in finding that workers' compensation, like unemployment benefits, are subject to the collateral source rule. *See Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 83 (3d Cir.1983); *Catlett v. Missouri State Highway Commission*, 627 F.Supp. 1015, 1018 (W.D.Mo.1985); Restatement (Second) of Torts § 920A(2). The back pay award is affirmed.

C

Knafel cross-appeals the district court's dismissal of all defendants except Pepsi from the Title VII suit. The district court dismissed GCC, Levin, and Davis because none was named in Knafel's EEOC charge. We conclude that the dismissal of those three defendants was proper.

The EEOC charge named only "Pepsi of Akron, subsidiary of General Cinema Corp." as respondent. The district court held that this phrase was merely descriptive of Pepsi and did not suffice to name GCC as a respondent. The individual defendants were nowhere named in the EEOC charge.

Knafel contends that merely referring to GCC in the EEOC charge is sufficient to give the court subject matter jurisdiction over that defendant. Knafel also argues that jurisdiction was proper as to Levin and Davis, since the Ninth Circuit has held that "Title VII charges can be brought against persons not named in an EEOC complaint as long as they were involved in the acts giving rise to the EEOC claims." *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1352 (9th Cir.1984).

We reject Knafel's argument. The rule in this circuit is that "a party must be

*named* in the EEOC charge before that party may be sued under Title VII 'unless there is a clear identity of interest between [the unnamed party] and a party named in the EEOC charge....' " *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir.1987) (quoting *Jones v. Truck Drivers Local Union No. 299*, 748 F.2d 1083, 1086 (6th Cir.1984)) (emphasis in original). *See also Allen v. Lovejoy*, 553 F.2d 522, 525 (6th Cir.1977); 42 U.S.C. § 2000e–5(g).

A "clear identity of interest" implies that the named and unnamed parties are virtual alter egos. Pepsi and GCC are not alter egos; their relationship is that of subsidiary and parent. They are two distinct entities with different business operations. Naming Pepsi in the EEOC charge does not suffice to name GCC. GCC, therefore, cannot be sued on this Title VII claim. Knafel also cannot join the individual defendants in her Title VII action, as they are nowhere named in the EEOC charge.

### III

 Knafel also cross-appeals the district court's dismissal of her pendant state law claims. Counts three and four of Knafel's complaint alleged claims that she termed "pendent to plaintiff's federal claims." Count three alleged retaliatory discharge for filing a workers' compensation claim, in violation of Ohio's workers' compensation act. Count four alleged an intentional tort based on Pepsi's insistence that Knafel perform tasks designed to cause her injury. In their August 11, 1986 motion for summary judgment, the defendants asserted that Knafel's state law claims were preempted by § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. The district court, relying on *Allis–Chalmers Corporation v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), agreed with the defendants and granted the motion for summary judgment as to counts three and four. We disagree in light of more recent Sixth Circuit precedent, and we reverse the summary judgment.

§ 301 of the LMRA, 29 U.S.C. § 185(a), states:

Suits for violation of contracts between an employer and a labor union ... may be brought in any district court of the United States having jurisdiction of the parties....

From this statutory basis and from the Supremacy Clause of Article VI of the United States Constitution, the Supreme Court has fashioned a general preemption doctrine, under which federal labor law has precedence over the various state labor laws. In *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957), the Court held that § 301 reflects Congress's preference that the substantive law to be applied in § 301 cases is federal law. The preemption doctrine originated in *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962), where the Court ruled that Congress intended "doctrines of federal labor law uniformly to prevail over inconsistent local rules." The preemption doctrine, however, is not a tool of universal applicability.

Where the state's interest in regulating employer-employee conduct is substantial and "does not threaten undue interference with the federal regulatory scheme," the Supreme Court has recognized exceptions to the doctrine of preemption. *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 302, 97 S.Ct. 1056, 1064, 51 L.Ed.2d 338 (1977). In respecting the importance "of the state's interest in protecting the health and well-being of its citizens," the Court upheld an exception to federal preemption for claims of intentional infliction of emotional distress, in addition to exceptions for physical injury and damage to reputation torts. *Id.* at 303, 97 S.Ct. at 1065. Only claims based on union discrimination in the employment setting are subject to the preemption principle, because they realistically threaten to interfere with the federal regulatory scheme. *Id.* at 305, 97 S.Ct. at 1066.

Eight years after it decided *Farmer*, the Supreme Court held, in *Allis–Chalmers Corporation v. Lueck*, that only "state rules that proscribe conduct, or establish

rights and obligations, independent of a labor contract" are not preempted by § 301 of the LMRA. 471 U.S. at 212, 105 S.Ct. at 1912. In finding that Knafel's claims were preempted, the district court relied on the Supreme Court's holding in *Allis–Chalmers* that:

> when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as preempted by federal labor-contract law.

*Id.* at 220, 105 S.Ct. at 1916. The Supreme Court, however, clearly stated that it was not holding that "every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement ... necessarily is pre-empted by § 301. The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis." *Ibid.*

In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court spoke to the distinction between those claims "independent of a labor contract" and those "substantially dependent" on the terms of a labor contract. In holding that the state law claim was independent because its resolution did not require construing the collective bargaining agreement, the Court held that:

> even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* 108 S.Ct. at 1883. Although the Seventh Circuit had dismissed Lingle's claim because it was "inextricably intertwined" with the collective bargaining agreement, the Supreme Court reversed because the application of state law did not require interpreting the agreement itself. In *Lingle*, a retaliatory discharge case, the Court held that a "purely factual inquiry," such as whether the employer's motive in discharging the employee was to deter the exercise of rights guaranteed by the state act, does not require construing the contract. *Id.* at 1182.

The Ohio statute under which Knafel seeks protection in count three of her complaint is similar to the Illinois statute in dispute in *Lingle*. Ohio Revised Code § 4123.90 provides that:

> [n]o employer shall discharge ... any employee because such employee filed a claim ... under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

Proving the elements of a retaliatory discharge claim under Ohio Rev.Code § 4123.90, as in *Lingle*, does not require an interpretation of the collective bargaining agreement between Pepsi and Knafel's union. We therefore hold that the district court erred by finding that Knafel's claims are preempted because "inextricably intertwined" with the terms of the labor contract.

We also rely on our recent decision in *Smolarek v. Chrysler Corporation*, 879 F.2d 1326 (6th Cir.1989) (en banc). In *Smolarek*, we held that a state law prohibiting retaliatory discharges creates rights independent of those created by a collective bargaining agreement. The *Smolarek* court followed *Lingle*, confirming that an inquiry into the conduct of an employee and the motivation of an employer does not necessarily require an interpretation of a labor agreement. Knafel's position is that, even if a collective bargaining agreement between her union and Pepsi did not exist, the Ohio statute would confer certain non-negotiable rights and duties upon all employees (organized or not) and employers. We agree.[4]

---

**4.** Pepsi bases its argument that resolution of Knafel's state claims does require an interpretation of the collective bargaining agreement on

several Ohio state cases holding that "just cause" (here, absenteeism), as defined in a labor contract, is an appropriate reason for discharge.

Knafel argues that her second state claim (count four of her complaint), for intentional infliction of emotional distress and physical pain, also falls outside the doctrine of preemption. *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25* and its progeny hold that emotional injury claims are not preempted by § 301. *See Keehr v. Consolidated Freightways of Delaware, Inc.,* 825 F.2d 133 (7th Cir.1987); *Tellez v. Pacific Gas and Electric Company,* 817 F.2d 536 (9th Cir.), *cert. denied,* 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987). We recently held that federal labor law did not preempt an employee's claim of tortious interference with his contractual relationship with his employer. *See Dougherty v. Parsec, Inc.,* 872 F.2d 766 (6th Cir.1989).

Knafel's alleged emotional distress was not a result of her termination, but rather of the abuse she claims to have endured while employed. This tort claim, like the claim in *Dougherty,* does not require an interpretation of the labor contract.

Whether Pepsi harassed Knafel so outrageously as to cause her emotional distress and physical injury is a question that the district court can decide without interpreting the collective bargaining agreement. The LMRA does not deprive an employee of all common law rights of action. *See Smolarek,* 879 F.2d at 1334 (claims of handicap discrimination are outside the scope of the preemption doctrine).

Since we today affirm the Title VII judgment, Knafel has pursued her federal claim to its completion. The Ohio Rev.Code § 4123.90 claim and the emotional distress claim are therefore the only claims left to be resolved. Under *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." Considerations of judicial economy and comity suggest that these claims ought to be left to

the state court. Knafel is free to refile her state claims in Ohio state court, in accordance with the Ohio saving statute, Ohio Rev.Code § 2305.19.

The Title VII judgment for Knafel is affirmed and the summary judgment against Knafel on her state law claims is reversed, and the case is remanded to the district court for dismissal without prejudice.

*See Zazo v. City of Akron,* 44 Ohio App.3d 1, 540 N.E.2d 733 (1987); *Rummel v. American Spring Wire Corporation,* No. 51063, slip op. (Ohio Ct. App. Oct. 9, 1986). We hold, however, that whether Pepsi violated Ohio Rev.Code § 4123.90 can be determined without regard to the collective bargaining agreement. None of the Ohio cases cited by Pepsi addresses the question of whether the particular § 4123.90 claims were "inextricably intertwined" with the terms of the labor contract.