NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0640n.06

No. 09-3513

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Oct 07, 2010**

LEONARD GREEN, Clerk

| | |
|---|---|
| JAMES SZOKE, et al., | ) |
| | ) |
| Plaintiffs-Appellants, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR THE |
| UNITED PARCEL SERVICE OF | ) NORTHERN DISTRICT OF OHIO |
| AMERICA, INC., | ) |
| | ) |
| Defendant-Appellee. | ) |

Before: COLE and McKEAGUE, Circuit Judges; and MAYS, District Judge.[*]

**SAMUEL H. MAYS, JR., District Judge.** Plaintiffs James Szoke and eighteen fellow employees[1] appeal the judgment of the district court granting summary judgment to Defendant United Parcel Service of America, Inc. ("UPS America") on their claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. Appellants argue that the district court erred by 1) finding that ERISA did not bar UPS America from switching Appellants from one pension plan to another, 2) refusing to allow Appellants to amend their Amended

---

[*] The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of Tennessee, sitting by designation.

[1] The other Plaintiffs are Delia Betzler, Cherylinne Burney, John J. Delpra, Dennis M. Detrowicz, Marcia Ann Evans, Michael J. Faber, Daniel R. Genius, James Humphrey, Lawrence M. Johnson, Jr., Cecelia Miller, Esther Morgan, Sheila Piotrowski, Judy Przeneslo, Richard Przeneslo, Phillip Ruppert, Debra J. Udowski, James Weddle, and Richard S. Wenmoth.

Complaint to add United Parcel Service, Inc. ("UPS Ohio") as a defendant, and 3) granting summary judgment to UPS America on their ADEA claim. For the following reasons, we **AFFIRM** the judgment of the district court.

**I.**

Appellants all work or worked as delivery center clerks for UPS Ohio and began working for the company between 1959 and 1989. (Amended Compl, Dkt. No. 14, ¶¶ 12-31.) Since 1974, the International Brotherhood of the Teamsters, Local 407 has represented all of UPS Ohio's clerical employees. (Compl., Dkt. No. 1, ¶ 2.) A series of collective bargaining agreements has governed Appellants' terms of employment with UPS Ohio, including their pension benefits. Because Appellants are Ohio-based employees, both the Teamsters' national agreement with UPS Ohio and a local agreement, known as the "Ohio Rider," govern Appellants' pension benefits. (*See, e.g.*, Administrative Record at 26.) ("Admin. Rec.") All UPS Ohio clerks began to participate in the UPS Retirement Plan in 1976. (Admin. Rec. at 147-263.) The Retirement Plan guaranteed that Appellants would receive a set monthly pension based on their number of years with UPS Ohio. It also capped Appellants' maximum monthly benefits. The Teamsters and UPS Ohio negotiated the maximum pension amount and raised the cap periodically. (*See* Admin. Rec. at 24 (noting that the cap increased from $1,000 per month to $1,100 per month under the agreement for the period beginning August 1, 1993).)

On September 1, 1995, Appellants ceased accruing additional benefits under the Retirement Plan and transferred to the UPS Pension Plan. (Admin. Rec. at 53.) That transfer occurred in the middle of the period covered by the collective bargaining agreements for August 1, 1993 to July 31,

1997. (*Id*. at 24.) Although no document dated September 1, 1995, reflects that the parties agreed to a transfer from the Retirement Plan to the Pension Plan, on October 13, 1995, all UPS Ohio clerks were invited to attend a presentation that would explain their new benefits. (*Id*. at 299-317.) The presentation highlighted what UPS Ohio viewed as improvements to Appellants' benefits. Specifically, the maximum monthly pension benefit increased from $1,100 to $1,500 under the Pension Plan. (*Id*. at 309.) The presentation also noted that "your bargaining representatives and numerous Teamster employees have made it known that they wanted to see UPS play a bigger role in helping you provide for your retirement." (*Id*. at 300.) To accommodate this request by union representatives and employees for better benefits, UPS Ohio agreed "to allow Ohio Teamsters to participate in the UPS Pension Plan instead of the UPS Retirement Plan." (*Id*.)

On December 21, 1995, the board of directors of UPS America, a subsidiary of UPS Ohio that serves as the plan sponsor for both the Retirement and Pension Plans, formally adopted an amendment reflecting the transfer to the Pension Plan. (*Id*. at 145.) The resolution noted that the effective date for the change was September 1, 1995, and that UPS America acted "to allow full-time employees represented for purposes of collective bargaining by the International Brotherhood of the Teamsters - Ohio Rider to participate in the [Pension] Plan." (*Id*.) The Teamsters signed an agreement with UPS Ohio on January 19, 1996, recognizing that "[e]mployees will remain in a United Parcel Service Health and Welfare and Pension Plan unless dictated otherwise by contract language (including the Ohio Rider)." (*Id*. at 28A.)[2] The collective bargaining agreement for the

---

[2]The Administrative Record's page numbering skips a page between pages twenty-eight and twenty-nine. The parties and this opinion refer to this skipped page as page 28A.

3

period from August 1, 1997 to July 31, 2002, specifically referred to the "UPS Pension Plan" and noted that the parties, through negotiation, had agreed to raise the maximum monthly pension benefit to $1,750 from its previous cap of $1,500. (*Id*. at 33.) Employees also received individual notice of these enhanced benefits under the Pension Plan. (*See id*. at 44 (letter to Plaintiff Cecelia Miller).)

Beginning in 1998, some of the Ohio clerks became unhappy with their pension benefits. (*See id*. at 48.) The union acknowledged that it had "over-looked" the clerks in prior contract negotiations, but urged them to "stay mad until the next contract is negotiated." (*Id*. at 47-48.) When the time approached to negotiate the collective bargaining agreement and Ohio Rider for August 1, 2002 to July 31, 2007, the UPS Ohio clerks wrote their union representatives and urged them to negotiate a better pension benefit that would not be reduced based on the employees' receipt of Social Security benefits. (*Id*. at 48-51.) Unsatisfied with the results of the negotiations and convinced that they would have received a larger benefit had they remained in the UPS Retirement Plan, Appellants filed suit against UPS America in the United States District Court for the Northern District of Ohio. Appellants alleged that UPS America had violated ERISA by switching their pension benefits without their knowledge or their union's consent. (Amended Compl. ¶¶ 39-44.) Appellants asked the district court to declare that they were never lawfully enrolled in the UPS Pension Plan and to calculate their benefits under the Retirement Plan. (*Id*. ¶¶ 49-50.) Appellants

also alleged that the effect of the change in plan was to discriminate against older employees, in violation of the ADEA.[3]  (*Id.* ¶¶ 53-59.)

The district court decided that only one of the Appellants, Cecelia Miller, had retired from UPS Ohio and consequently was due benefits currently.  The parties agreed that the benefit calculation for Miller "would be representative of all retirees, present or future." *Szoke v. UPS of Am., Inc.*, No. 1:03CV1628, 2006 U.S. Dist. LEXIS 69325, at *4 (N.D. Ohio Sept. 26, 2006).  The district court, therefore, had the parties submit Miller's claim for additional benefits to the plan administrator so that she could exhaust her administrative remedies.  The administrator rejected her claim that it should determine her benefits under the Retirement Plan and denied her subsequent administrative appeal of that decision.  (Admin. Rec. at 1-3, 53-55.)  After the conclusion of the administrative review process, the district court affirmed the administrator's determination, finding that its benefit calculation was not arbitrary or capricious. *Szoke*, 2006 U.S. Dist. LEXIS 69325, at *17-20.  The district court later granted summary judgment to UPS America on the remaining Appellants' ERISA claims because the same analysis applied to the other eighteen Appellants.  (Order, Dkt. No. 94, at 9.)  The district court also granted summary judgment to UPS America on Appellants' ADEA claims because UPS America was not Appellants' employer and no identity of interest existed between UPS America and the actual employer, UPS Ohio.  (*Id.* at 18-22.) Finally, the district court rejected Appellants' effort to amend their Amended Complaint to state a claim

---

[3]Appellants also alleged that UPS America had violated ERISA by failing to provide accurate information to plan participants, 29 U.S.C. § 1132(c), and had breached its fiduciary duties.  (Amended Compl. ¶¶ 47-48, 51-52.) Appellants did not appeal the district court's determination as to these two counts.

against UPS Ohio. It found that Appellants had unduly delayed; the amendment would cause substantial prejudice to the Defendant; and Appellants had failed to cure their Amended Complaint's deficiency although Appellants had known for years that UPS America was not their employer. (*Id*. at 22-25.) Appellants timely appealed. (Notice of Appeal, Dkt. No. 96.)

## II.

### A.

Appellants initially argue that the district court erred in finding that the plan administrator's benefit determination was not arbitrary and capricious. Appellants make three primary arguments. First, they argue that the district court improperly limited its review to the administrative record considered by the plan administrator. Appellants argue that it was inappropriate for the district court to limit its consideration to the administrative record for the claims of employees other than Miller. (Appellants' Br. at 26-30.) Appellants next assert that a separate section of the collective bargaining agreement – not contained within the administrative record – forbids the change in pension plans that occurred. (*Id*. at 27-28.) Finally, Appellants assert that the record does not support the administrator's decision and that the administrator "cherry-picked" the record for evidence that would support the denial of benefits. (*Id*. at 26-27, 30-31.)

We review a district court's grant of summary judgment *de novo*. *Wilkins v. Baptist Healthcare Sys., Inc*., 150 F.3d 609, 613 (6th Cir. 1998). We also review a plan administrator's denial of benefits *de novo*. *Moon v. Unum Provident Corp*., 405 F.3d 373, 378 (6th Cir. 2005). However, where a plan "vests the administrator with complete discretion in making eligibility

determinations, such determinations will stand unless they are arbitrary and capricious." *Id.* (citation omitted). "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (internal quotation marks and citation omitted). The parties do not dispute that the plan administrator had complete discretion. (*See* Appellants' Br. at 25; Appellee's Br. at 22.)

**1.**

A federal court's review of a plan administrator's benefit determination is limited to the record as it existed on the date the administrator made its decision. *Moon*, 405 F.3d at 378-79. Neither the text nor "the legislative history [of ERISA] suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). The district court, therefore, properly limited its review to the administrative record considered by the plan administrator. We shall do the same and consequently will not consider the additional evidence outside the administrative record on which Appellants seek to rely.[4] Further, because Miller's

---

[4]Appellants ask us to consider the following language from the National Master Agreement between the Teamsters and UPS Ohio for the period from August 1, 1993 to July 31, 1997:

**Article Six, Section 1. Extra Contract Agreements:** Except as may be otherwise provided in this Agreement, the Employer agrees not to enter into, or attempt to enter into, any agreement or contract with its employees, either individually or collectively, or to require or attempt to require employees to sign any document, either individually or collectively, which in any way conflicts with the provisions of this Agreement. Any such Agreement or document shall be null and void. Any such agreement or document may not be placed in an employee's file or used by the Employer as a basis for discipline or used in connection with any disciplinary proceeding, nor may any such agreement or

benefit claim was representative of the potential claims of all Appellants, the district court properly restricted its review to the administrative record when considering the remaining eighteen Appellants' claims. *See Szoke*, 2006 U.S. Dist. LEXIS 69325, at *4.

**2.**

Appellants argue that the administrative record does not support the plan administrator's determination that Appellants' benefits should be calculated under the UPS Pension Plan. (Appellants' Br. at 30-31.) Appellants are correct that there is no signed document dated September 1, 1995, reflecting the switch from the Retirement Plan to the Pension Plan. However, the record as a whole supports the administrator's determination that the initial calculation of Appellants' benefits under the Pension Plan was correct.

The presentation made to clerical employees on October 13, 1995, supports the administrator's decision. It reflects that the switch from the Retirement Plan occurred on September 1, 1995, and notes that the switch happened because Teamster "representatives and numerous Teamster employees have made it known that they wanted to see UPS play a bigger role in helping

---

document nor the contents thereof be divulged to any person or entity.

(Dkt. No. 78 at 325.) Appellants argue that this language prohibits UPS Ohio from entering into any agreement that would modify their pension benefits. (Appellants' Br. at 15.) Appellants' argument is unpersuasive. The quoted language seeks to prohibit UPS Ohio from entering into side agreements with individual employees or groups of employees that would undermine the terms of the collective bargaining agreement negotiated with the union. The language does not prohibit UPS Ohio from renegotiating specific terms with the union, which is what the plan administrator determined occurred. Indeed, Article Six, Section 1 does not mention the union. It refers instead to "employees" and prohibits side agreements from being "placed in an employee's file or used by the Employer as a basis for discipline." Appellants do not argue that UPS Ohio forced them to sign a side-agreement changing their pension benefits. Much of their argument rests on the assertion that they had no advance notice of the plan change. (See Appellants' Br. at 24-31.) As the concurrence amply demonstrates, even if we were to consider this new evidence de novo, Appellants would not prevail.

[employees] provide for [their] retirement." (Admin. Rec. at 300, 304.) This slide presentation took place less than sixty days after the effective date of the switch. Similarly, the resolution enacted by UPS America's board of directors making the change official states that the change occurred to benefit "full-time employees represented for purposes of collective bargaining by the International Brotherhood of Teamsters - Ohio Rider." (*Id*. at 145.) Appellants received notification of the change along with updates about their current eligibility for benefits. (*Id*. at 44 (letter to Cecelia Miller).)

The record further reflects that Appellants were aware of the change to the Pension Plan well before filing suit in 2004. In April and May 2001, Appellants complained of being "over-looked" in prior pension negotiations and asked their union to improve their benefits in future contract negotiations. (*Id*. at 47-48.) Appellant Szoke wrote and signed a letter on behalf of all clerical employees from Local 407 and noted specifically that they were currently "under the UPS Pension Plan." (*Id*. at 48.) Szoke attached three sheets containing the signatures of the other Local 407 clerical employees, including all named Appellants. (*Id*. at 49-51.) Notably, the letter did not complain that the 1995 change to the Pension Plan occurred without notice or without collective bargaining by the union. (*Id*. at 48.) Appellants complained instead that the union had failed to negotiate the best possible agreement on their behalf. (*Id*.)

The September 15, 1997, Letter of Understanding, made a part of the collective bargaining agreements for the period from 1997 to 2002, also supports the administrator's decision. The letter required that the maximum monthly benefit under the "Pension Plan" increase from $1,500 to $1,750. (*Id*. at 33.) The maximum benefit had risen to $1,500 after the switch to the Pension Plan.

(*See id*. at 316.)   Under the prior Retirement Plan and the original language of the collective bargaining agreements for the period from 1993-1997, the maximum benefit was $1,100. (Id. at 24.) The Teamsters' acknowledgment of the $1,500 cap and the negotiated agreement with UPS Ohio to raise that cap to $1,750 shows at a minimum that the Teamsters, through collective bargaining, ratified the pension changes.[5]

Appellants also assert that the plan administrator "cherry-picked" the record to support its initial decision to deny additional benefits.  (Appellants' Br. at 26-27); *see Metro Life Ins. Co. v. Conger*, 474 F.3d 258, 266 (6th Cir. 2007) (finding a plan administrator's decision arbitrary and capricious where it cherry-picked the record for evidence to support its denial of benefits).  The record does not support this assertion.  Between August 30, 2004, and June 2, 2005, the plan administrator sent four letters to Appellants' counsel asking him to supplement the administrative record with evidence supporting his contentions.  (Admin. Rec. at 79-97.)  The final letter warned Appellants' counsel that, if he did not provide further documentation, "the Committee will have no option other than to consider your failure to respond in making its determination."  (*Id*. at 97.) Appellants' counsel failed to provide the requested documentation supporting the request for additional benefits.  (*See id*. at 53 (plan administrator's decision denying appeal).)

Because the administrative record supports the administrator's determination that Appellants are to receive benefits under the Pension Plan and that their union bargained for those benefits in

---

[5]This Letter also refutes the argument advanced by *amicus* Truck Drivers' Union Local 407 that the Union never negotiated a change from the Retirement Plan to the Pension Plan.  (*Cf*. Brief of *Amicus Curiae* at 5-13.)

contract negotiations, we affirm the judgment of the district court finding that the plan administrator's benefits determination was not arbitrary or capricious.

**B.**

Appellants make two arguments to support their assertion that the district court erred in granting summary judgment in favor of UPS America on their ADEA claims. First, they argue that the district court abused its discretion when it denied them leave to amend their Amended Complaint to reflect that their claim should lie against their employer, UPS Ohio, rather than plan sponsor, UPS America. They argue that, at a minimum, the district court should have allowed additional time for discovery so that they could review UPS' corporate structure and determine who their actual employer was. (Appellants' Br. at 31-35.) Alternatively, Appellants argue that UPS America and UPS Ohio share an identity of interest that would allow Appellants to pursue their claims against UPS America without formally naming it in the EEOC charge. (Reply Br. at 14-23.)

We review a district court's decision denying a motion to amend for abuse of discretion. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). A district court abuses its discretion when it fails to give a reason for denying the motion, applies an incorrect legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact. *Riverview Health Inst., LLC v. Medical Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997). We review a district court's grant of summary judgment *de novo*. *Wilkins*, 150 F.3d at 613.

**1.**

Appellants filed an Amended Complaint on October 27, 2003. (*See* Dkt. No. 14.) The Amended Complaint named UPS America as the Defendant and alleged that it "was the employer of all Plaintiffs during the relevant period of time." (Amended Compl. ¶ 32.) UPS America filed its Answer on January 30, 2004. (*See* Dkt. No. 42.) It specifically denied that it was Appellants' employer. (Answer ¶ 32.) It also "affirmatively state[d]" that all Appellants are or were "employee[s] of United Parcel Service, Inc., an Ohio corporation." (*See, e.g., id*. ¶ 13.) It repeated that information nineteen times, once for each Appellant. (*Id*. ¶¶ 13-31.) Appellants did not file their Motion to Amend until February 22, 2007, after the district court had granted summary judgment on Appellant Miller's ERISA claims and while motions for summary judgment were pending on all remaining claims of the Amended Complaint. (*See* Dkt. No. 84.)

When considering whether to grant a motion to amend under Federal Rule of Civil Procedure 15(a), district courts must consider a number of factors, among them "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade*, 259 F.3d at 458 (citing *Head v. Jellico Housing Auth*., 870 F.2d 1117, 1123 (6th Cir. 1989)). "Delay by itself is not sufficient reason to deny a motion to amend." *Id*. (citation omitted). Notice and substantial prejudice are two of the "critical factors." *Id*. at 458-59 (citation omitted). When a party seeks to amend its complaint at a late stage of the litigation, "there is an increased burden to show justification for failing to move earlier." *Id*. at 459 (citing *Duggins v. Steak 'N Shake, Inc*., 195 F.3d 828, 834 (6th Cir. 1999)).

Appellants waited more than three years after UPS America first filed its Answer denying that it was Appellants' employer before filing their Motion to Amend. Contrary to their assertions, Appellants did not need discovery to determine who their employer was. The Answer stated that UPS Ohio was Appellants' employer. (Answer ¶¶ 13-31.) Appellants were on notice that they might have named the wrong defendant even before UPS America filed its Answer. In their January 29, 2004, Response to UPS America's Motion to Dismiss, Appellants explained that there was a "variance" between the name on the EEOC charge and the party named as a defendant in the lawsuit. (Dkt. No. 39, at 7.) Appellants then explained it was their intention to argue that there was an identity of interest between UPS Ohio and UPS America. (*Id*. at 7-8.) Appellants failed to act with diligence in seeking to amend their Amended Complaint. *See United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995) ("[A] party must act with due diligence if it intends to take advantage of [Rule 15(a)'s] liberality." (citation omitted)).

By seeking permission to amend their Amended Complaint, add a new defendant, and change their legal argument at such a late stage of the litigation, Appellants deprived either UPS entity of notice of the claims against which it would need to defend. We have held that a defendant suffers substantial prejudice when a plaintiff waits until after the filing of a summary judgment motion to file a motion to amend. *Corning v. Nat'l Union Fire Ins. Co*., 257 F.3d 484, 496-97 (6th Cir. 2001) (motion to amend denied where it "suddenly appear[ed]" after defendant had moved for summary judgment); *see also Wade*, 259 F.3d at 459. Here, not only was a summary judgment motion pending, but the district court already had granted a prior motion for partial summary judgment. Because Appellants' three-year delay in seeking to amend their Amended Complaint was unjustified,

deprived the Defendant and UPS Ohio of notice, and prejudiced the Defendant and UPS Ohio, we hold that the district court did not abuse its discretion in denying Appellants' Motion to Amend.

**2.**

Appellants' second argument is that there is an identity of interest between the party named in their EEOC charge, UPS Ohio, and the party they have actually sued, UPS America. (Reply Br. at 14-23.) A party may only sue an entity for violating civil rights statutes such as Title VII or the ADEA if it named the same entity in its prior EEOC charge. *See Knafel v. Pepsi-Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1480-81 (6th Cir. 1990). There is a limited exception to this general rule when the unnamed party in the EEOC charge has a "clear identity of interest" with the party actually sued. *Id*. at 1481 (citation and internal quotation marks omitted). We have adopted two separate tests to determine when an identity of interest exists. *See Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 411-412 (6th Cir. 1999). Under either test, the named and unnamed parties must be "virtual alter egos." *Knafel*, 899 F.2d at 1481. Merely showing that they are parent and subsidiary is not sufficient. *See id*.

The first test, known as the Seventh Circuit test, requires that a party demonstrate that "the unnamed party possesse[d] sufficient notice of the claim to participate in voluntary conciliation proceedings" before the EEOC. *Alexander*, 177 F.3d at 411; *see also Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981). We have required that the unnamed party have actual notice of the claim. *See, e.g., Alexander*, 177 F.3d at 412 (finding

the test satisfied when a local union official against whom plaintiff filed discrimination charges informed the national union and forwarded copies of the charges); *Jackson v. Fed. Express Corp.*, No. 04-2470 Ma/A, 2006 U.S. Dist. LEXIS 5060, at *8-9 (W.D. Tenn. Jan. 18, 2006) (EEOC directly contacted unnamed party, and it responded as though charge filed against it).  Although Appellants note that UPS America received all details of the charge when they filed suit in federal court, (*see* Reply Br. at 19-20), the purpose of the Seventh Circuit test is to allow claims to proceed only against those unnamed parties who had an opportunity to attempt voluntary conciliation before the EEOC.  *Alexander*, 177 F.3d at 411; *see also Eggleston*, 657 F.2d at 905 (the unnamed party must have had the opportunity to settle the charge in voluntary conciliation); *Weatherspoon v. N. Oakland Gen. Hosp.*, No. 04-40184, 2006 U.S. Dist. LEXIS 2803, at *8 (E.D. Mich. Jan. 17, 2006) ("Mere notice of the EEOC investigation . . . is insufficient to satisfy the test.").  UPS America did not have an opportunity to settle the claim voluntarily.  Therefore, we find that Appellants have not satisfied the Seventh Circuit test.

The second test we have adopted for determining whether an identity of interest exists is known as the Third Circuit test.  *Alexander*, 177 F.3d at 411; *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977).  The four factors to consider under that test are:

(1) Whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

(2) Whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

15

(3) Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

(4) Whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Romain v. Kurek*, 836 F.2d 241, 246 (6th Cir. 1987) (citation omitted). These factors consider the relationship between the named and unnamed party when Appellants filed their initial EEOC charge. *Alexander*, 177 F.3d at 411.

At the time Appellants filed their initial EEOC charge against UPS Ohio, they could easily have determined that UPS America was their plan sponsor. The Retirement Plan summary, given to all eligible UPS employees, clearly states "The Plan is sponsored by United Parcel Service of America, Inc.," and is followed by UPS America's mailing address. (Admin. Rec. at 278.) Because reasonable efforts would have led Appellants to discover UPS America's potential role in their age discrimination claim, the first factor weighs against Appellants.

UPS Ohio and UPS America would have different interests in voluntary conciliation proceedings. UPS America has no employees, serves solely as the Retirement and Pension Plans' sponsor, and did not participate in negotiations with the national Teamsters or Appellants' Local 407. UPS Ohio and UPS America are also legally separate entities, and the existence of a parent-subsidiary relationship is not enough to satisfy the identity of interest test. *See Knafel*, 899 F.2d at 1481. Because UPS America did not have the opportunity to participate in conciliation and did not have actual notice of the charge against UPS Ohio, it suffered prejudice. *Cf. Alexander*, 177 F.3d at 412 (holding that, when the national union did have actual notice of the pending EEOC charge and therefore could have participated in any conciliation proceedings, the third factor supports finding

16

that an identity of interest exists); *Weatherspoon*, 2006 U.S. Dist. LEXIS 2803, at *10 (separate institutions with separate interests require separate notice). Therefore, the second and third factors also weigh against finding that there is an identity of interest between UPS Ohio and the unnamed party in the charge, UPS America.

UPS America did not hide its role in administering the Retirement and Pension Plans or suggest that UPS Ohio was actually the party administering the plans. As noted above, the plan documents, including the summary provided to Appellants, unambiguously stated that UPS America was the plan sponsor. (Admin. Rec. at 278.). All four factors of the Third Circuit test weigh against finding that there is an identity of interest. Because neither test adopted by this circuit favors finding that the unnamed party in the EEOC charge, UPS America, shares an identity of interest with UPS Ohio, we affirm the district court's grant of summary judgment to UPS America on Appellants' ADEA claims.

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court in its entirety and hold that 1) the plan administrator's decision denying Appellants additional benefits was not arbitrary and capricious; 2) the district court did not abuse its discretion in denying Appellants' motion to amend; and 3) there is no identity of interest between UPS America and UPS Ohio.

17

No. 09-3513
*Szoke v. United Parcel Serv. of Am., Inc.*

**McKEAGUE, Circuit Judge, concurring.** I concur fully in the result reached by the majority. I write separately to clarify the route by which I believe we get there. In my opinion, the ERISA claims of the plaintiffs other than Miller should be given *de novo* review, instead of deferential review under the arbitrary or capricious standard, and our review should not be limited to the administrative record. In any event, the plaintiffs' ERISA claims fail under either standard of review.

I

Generally, we review a district court's decision in a §1132(a)(1)(B) ERISA action under *de novo* review. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005). Arbitrary or capricious review is only used when a plan administrator has denied benefits and the benefits plan "vests the administrator with complete discretion in making eligibility determinations." *Id*. at 378-379. The only retired plaintiff in this case, Miller, submitted a claim to the plan administrator under a benefits plan that undisputably vests the administrator with discretion. Thus, I agree with the majority's review of the plan administrator's denial of Miller's benefits under the arbitrary or capricious standard.

Because the other plaintiffs have not retired and did not submit their claims[1] to the plan administrator, *de novo* review of their ERISA claims would ordinarily be appropriate.[2] However,

----

[1]Because the plaintiffs other than Miller are not retired, their claims are slightly different. Presumably the other plaintiffs sought to clarify "future benefits under the terms of the plan" while Miller's claim was to "recover benefits due to [her] under the terms of [her] plan." 29 U.S.C. § 1132(a)(1)(B).

[2]For ERISA claims, the Sixth Circuit has generally recognized an exhaustion of administrative remedies requirement that is committed to the discretion of the district court. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 418 (6th Cir. 1998). Exhaustion was not addressed

18

the majority approves the district court's finding that there was an agreement to submit Miller's claim to the plan administrator and to treat the decision on her claim as a representative for the claims of the other plaintiffs. *Szoke*, 2006 U.S. Dist. LEXIS 69325, at *5. Thus, the plan administrator's decision was deemed applicable to all plaintiffs. While there are indications in the record that some sort of agreement existed, the evidence does not clearly establish that the parties agreed that the plan administrator's disposition of Miller's claim was to be representative of all claims.

The parties allegedly reached this agreement during an informal status conference in the district court, before the Honorable John M. Manos, on May 25, 2004. However, the minutes from that conference do not refer to an agreement. (R. 49, Minutes of Proceedings, at 1 ("This action is held in abeyance pending exhaustion of administrative remedies as to the current retiree Plaintiff.")). Indeed, there is no tangible recording of such an agreement anywhere in the record. Complicating matters, Judge Manos passed away in 2006 and the case was reassigned. Without clear evidence that the other plaintiffs agreed to use Miller's claim as a representative of their claims, or any evidence that suggests they agreed to be bound by the plan administrator's decision, I would conduct *de novo* review of the disposition of their claims.

Plaintiffs argue that the district court improperly limited its review of the ERISA claims to the administrative record considered by the plan administrator. The majority rejects that argument and I concur with this decision as applied to Miller's claim. *Moon*, 405 F.3d at 378 (noting that

---

below and I assume for purposes of this case, where the non-retired plaintiffs are seeking a judgment to clarify future benefits, that exhaustion was not required under § 1132(a)(1)(B).

federal courts are limited to reviewing the administrative record as it existed when the plan administrator made its final decision). However, because I would review the decision on the claims of the other plaintiffs *de novo*, and because that decision was not premised on a claim-specific administrative record, I would hold that the district court had a duty to consider evidence proffered by Plaintiffs outside the administrative record.

## II

Turning to the merits, Plaintiffs argue that the district court erred in declaring that the plaintiffs were not entitled to continuing participation and benefits from the UPS Retirement Plan. Even under *de novo* review, I would affirm the determination that Plaintiffs' ERISA claims fail.

The issue is whether Plaintiffs' transfer from the Retirement Plan to the Pension Plan on September 1, 1995 was contrary to the collective bargaining agreement. There is no need to reiterate all the evidence considered by the plan administrator and referred to in the majority's opinion. I agree that all of this evidence supports the conclusion that the union either agreed to or ratified a transfer of the plaintiffs to the Pension Plan in September 1995. The language contained in two subsequent agreements concerning the plaintiffs is particularly persuasive on this point. Plaintiffs were all delivery center clerks. On January 19, 1996, UPS and the union executed an agreement concerning Delivery Center employees which stated that "[e]mployees will remain in a United Parcel Service Health & Welfare and *Pension Plan* unless dictated otherwise by contract language (including the Ohio Rider)." Admin. Rec. at 28A (emphasis added). During the next collective bargaining agreement period, on September 15, 1997, UPS and the union executed a letter of understanding that amended the Ohio Rider for all *clerical* employees, which presumably included

20

the delivery center clerks. *Id*. at 33. This agreement stated that UPS "will improve the present *Pension Plan* of the *full-time union clerks* in the UPS Pension Plan from a maximum benefit of fifteen hundred dollars ($1500) per month to seventeen hundred and fifty dollars ($1750) per month." *Id*. (emphasis added). Neither agreement refers to the Retirement Plan and at least some plaintiffs received notice of the change in benefits. *Id*. at 43 (letter to Cecelia Miller). Read with all of the other evidence in the record, these two agreements establish that the union either approved of or ratified the transfer of the plaintiffs from the Retirement Plan to the Pension Plan on September 1, 1995.

The evidence proffered by Plaintiffs from outside the administrative record does not alter this conclusion. Plaintiffs argue that the district court should have considered a provision of the 1993 collective bargaining agreement as well as the declaration of Joseph Pierani, a union representative. Plaintiffs contend that the language from the 1993 CBA prohibited UPS from transferring Plaintiffs into the Pension Plan. I concur in the majority's conclusion at n.5 that this language simply prohibits UPS from entering into side agreements with employees or groups of employees, not from renegotiating specific terms with the union. UPS and the union were free to negotiate or approve a transfer of the plaintiffs into the Pension Plan.

Plaintiffs also argue that the Pierani declaration shows that the transfer of the plaintiffs from the Retirement Plan to the Pension Plan was not based on any provision in a collective bargaining agreement and is in fact a violation of the CBA. However, part of this argument rests on an assumption that the 1993 CBA prohibited UPS and the union from renegotiating specific terms–which is wrong. Otherwise, nothing in the Pierani declaration calls into doubt the conclusion

that Plaintiffs were properly transferred from the Retirement Plan to the Pension Plan. Indeed, it only serves to confirm Plaintiffs were transferred into the Pension Plan. Pierani is a union representative who negotiated with UPS from 1995-1998 about the closure of the Delivery Information Center, where many of the plaintiffs worked. According to the declaration, Pierani and his UPS counterpart came to an understanding in 1995 that the employees would "remain in the same health and welfare pension plans unless dictated differently by the contract language including the Ohio Rider." (R. 77, ex. 20, Pierani Dec. at 2.)

This "understanding" of course, was preliminary; the full agreement was not reached until three years later, well after Plaintiffs were transferred to the Pension Plan. (*Id*.) Further, nothing in this understanding prevented the union and UPS from later agreeing to transfer Plaintiffs to the Pension Plan in September 1995. Finally, the language in the final 1998 agreement regarding the closure of the Delivery Information Center states that, "[e]mployees will remain in a United Parcel Service Health & Welfare and *Pension Plan* unless dictated by contract language (including the Ohio Rider)." (R. 78, ex. 10 (emphasis added)). This confirms that those plaintiffs working at the Delivery Information Center were previously transferred to the Pension Plan.

Thus, the evidence Plaintiffs argue the district court should have considered makes no difference. When this evidence is examined along with the entirety of the administrative record, it is apparent that the union either bargained for or ratified a transfer of the plaintiffs from the Retirement Plan to the Pension Plan in September 1995. Therefore, even under *de novo* review in light of an expanded record, the judgment of the district court is properly affirmed.