NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 12a0847n.06

No. 11-5484

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 06, 2012*

LEONARD GREEN, Clerk

WILLIAM HILL,                                          )
                                                      )
    Plaintiff-Appellant,                          )
                                                      )
                                                      )   ON APPEAL FROM THE UNITED
v.                                                    )   STATES DISTRICT COURT FOR
                                                      )   THE EASTERN DISTRICT OF
FORT LOUDOUN ELECTRIC COOPERATIVE;                    )   TENNESSEE
THE FORT LOUDOUN ELECTRIC                             )
COOPERATIVE HEALTHCARE PLAN,                          )
                                                      )
    Defendants-Appellees.                         )


BEFORE:  GUY and DONALD, Circuit Judges; and O'MEARA, District Judge.[*]


      **JOHN C. O'MEARA, District Judge.**  In this matter, Plaintiff-Appellant, William R.

"Randy" Hill ("Plaintiff" or "Hill"), appeals the district court's decision to grant Defendants-

Appellees, Fort Loudoun Electric Cooperative ("FLEC") and the Fort Loudoun Electric Cooperative

Healthcare Plan's (collectively, "Defendants"), motion for summary judgment and deny Plaintiff's

motion for judgment.  Plaintiff, who worked for FLEC for over 27 years, alleged that his former

employer improperly denied his claim for a waiver of health-insurance premiums after he was

deemed disabled by FLEC's long-term disability ("LTD") benefits provider.  FLEC has an unwritten

policy of waiving such fees for employees who are unable to work for as long as they are entitled to

---

    [*] The Honorable John C. O'Meara, United States District Judge for the Eastern District of
Michigan, sitting by designation.

LTD benefits.  Plaintiff argued that the policy is an employee welfare benefit plan and is, therefore, governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*.

The district court held that the policy was not governed by ERISA and granted Defendants' motion for summary judgment.  (R. 39.)  The court also ruled that Plaintiff failed to properly move to amend his complaint to add another cause of action under ERISA.  On appeal, Plaintiff contends that the district court erred in finding FLEC's policy was not an employee welfare benefit plan under ERISA and that he failed to properly move to amend his complaint.  For the reasons that follow, we AFFIRM the district court's decision.

## BACKGROUND/PROCEDURAL HISTORY

### I.     General Background

Plaintiff began working for FLEC in 1977.  Plaintiff had a long history of knee problems throughout his employment with FLEC, and as of November 29, 2004, he was unable to work full-time.  On March 15, 2005, Plaintiff filed a LTD claim under the National Rural Electric Cooperative Association ("NRECA") Long Term Disability Plan (the "LTD Plan"), in which FLEC is a participating employer.  (Appellant's Br. 8.)  Although Plaintiff attempted to return to work in February 2005, he was unable to work effectively and was told to go home.  (*Id.* at 9.)  Accordingly, his LTD claim was based on the date he originally became unable to work in November.

The body that ruled on Plaintiff's LTD claim was Cooperative Benefits Administrators ("CBA"), a subsidiary of NRECA and the "claims administrator" of the LTD plan.  (*Id.* at 8.)  On April 19, 2005, CBA denied his claim.  Plaintiff appealed, and CBA upheld its original decision.  (*Id.* at 10.)  Plaintiff filed suit against the LTD Plan on December 21, 2007, and a settlement was

2

reached on July 30, 2008. Pursuant to that agreement, the LTD Plan conceded that Plaintiff was disabled and entitled to the first two years of LTD benefits available under the LTD Plan. (*Id.*) The settlement also required CBA to reevaluate whether Plaintiff met the definition of disability beyond the first two years, which required a finding that he was disabled from "any occupation which [he is] reasonably fitted by education, training, or experience." (*Id.*) CBA ultimately concluded that Plaintiff was disabled from any such occupation on January 8, 2009. (*Id.*)

In addition to his claims for LTD benefits, Plaintiff also had an ongoing claim for workers' compensation against FLEC. In connection with that claim, FLEC performed surveillance on Plaintiff while he collected temporary total disability benefits. Over the course of several days, Plaintiff was seen climbing up and down a ladder, walking over uneven ground, and walking on a roof while building a shed in his backyard. (Appellee's Br. 7.) These observations were caught on videotape. On April 29, 2005, Plaintiff was called into a meeting with representatives from FLEC, who confronted him about these activities. During the meeting, Plaintiff admitted that he was constructing a barn while allegedly disabled from working. (*Id.*) As a result, on May 2, 2005, FLEC terminated Plaintiff's employment by letter based on his violation of FLEC's Board Policy 201A rules of conduct and performance, which prohibited dishonesty. (*Id.*) On that same day, FLEC notified Plaintiff in writing that his health insurance was terminated. (R. 30 at 4.) The letter also informed Plaintiff of his right under COBRA to continue health insurance coverage, at his expense, for 18 months. (*Id.*)

In addition to sending the two letters to Plaintiff, on May 2, 2005, FLEC and its workers' compensation insurance carrier filed a suit against Plaintiff in Tennessee Circuit Court for fraud,

under Tenn. Code Ann. § 50-6-225(a)(1) and the Workers' Compensation Fraud Act, Tenn. Code Ann. §§ 56-47-101, *et seq*. (Appellee's Br. 8.) Plaintiff filed a counter complaint based on intentional infliction of emotional distress and retaliatory discharge. (*Id.*) The trial court dismissed the counter complaint, and Plaintiff appealed. The Tennessee Court of Appeals upheld the dismissal of the intentional infliction of emotional distress claim, but remanded on the retaliatory discharge claim. *Federated Rural Elec. Ins. Exch. v. Hill*, No. M2005-02461-COA-R3-CV, 2007 WL 907717, at *10-12 (Tenn. Ct. App. Mar. 26, 2007). On remand, the trial court dismissed the retaliatory discharge claim after finding that Plaintiff was terminated because of his dishonesty and efforts to collect disability benefits while engaging in strenuous labor at home. That ruling was upheld on appeal. *Federated Rural Elec. Ins. Exch. v. Hill*, No. M2009-01772-COA-R3-CV, 2011 WL 3452196, at *7 (Tenn. Ct. App. Aug. 8, 2011).

## II.     Plaintiff's Claim Pursuant to FLEC's Unwritten Policy

On June 2, 2007, Plaintiff sent FLEC a letter requesting information about his claim for LTD benefits. (Appellee's Br. 9.) In this letter, Plaintiff also asked if there were other benefits that he would be entitled to if he were found disabled. (*Id.*) On July 2, 2007, FLEC's attorney, W. Holt Smith ("Smith"), sent a response and provided several documents pertaining to Plaintiff's inquiry. One aspect of this response informed Plaintiff that "[a]ny [FLEC] employee who becomes disabled while working full time for the cooperative is entitled to a waiver of health insurance premiums for the individual or family coverage for the entire time the employee is deemed disabled by our long term disability carrier." (R. 32-2 at 47.) Additionally, when asked if there were any additional procedures or applications Plaintiff needed to fill out to receive this waiver, the attorney responded:

"No additional forms must be filled out. The waiver of health insurance premiums, life insurance continuation and retirement continuation is all contingent upon approval of long term disability benefits by CBA." (*Id.* at 152.) Plaintiff contends that this policy (the "policy") constitutes an employee welfare benefits plan, which is governed by ERISA.

After being found disabled by CBA on January 8, 2009, Plaintiff contacted FLEC and requested that he be reinstated into the company's healthcare plan. (Appellant's Br. 13.) FLEC's new CEO, Jim Kendrick, responded to Plaintiff's request by letter dated January 27, 2009. (R. 28 at 26.) The letter informed Plaintiff that FLEC had no written or formal policy about waiving health-insurance premiums for disabled employees who qualified for LTD benefits. (*Id.*) It also explained that even if there was an unwritten policy (FLEC has since admitted that there is such a policy), Plaintiff would still be denied the waivers because, unlike the other employees receiving LTD benefits, he was terminated on May 2, 2005 for a violation of FLEC's conduct and performance policies. As a result, the provision of continued health insurance was not available to Plaintiff. (*Id.*)

On April 20, 2009, Plaintiff wrote a letter appealing the denial of his claim under the unwritten policy. (*Id.* at 27-28.) Plaintiff argued that the requirement that he remain employed or in good standing with FLEC in order to receive the waiver of premiums was inconsistent with "the plan documents[1] we were provided." (*Id.* at 27.) On April 22, 2009, Smith sent Plaintiff another letter denying his appeal. (*Id.* at 30.) In this letter, Smith noted that Plaintiff's settlement with

---

[1] The "plan documents" Plaintiff is referring to are the two statements quoted above that Smith sent as part of FLEC's response to Plaintiff's inquiry about additional benefits on June 2, 2007.

NRECA specifically excluded any questions concerning Plaintiff's possible eligibility for health insurance benefits. (*Id.*) As part of the settlement, Plaintiff agreed that "the NRECA Plan has no control over Hill's employment status with [FLEC] and therefore cannot and does not offer any representations or assurances as to Hill's possible eligibility for health insurance benefits or any other employment benefits, including employment benefits for which eligibility is dependent on employment status." (R. 28 at 20.)

## III. Procedural History

After Plaintiff's appeal was denied, he filed the instant suit in the Eastern District of Tennessee on September 25, 2009. In his one-count complaint, Plaintiff alleged that FLEC's unwritten policy to waive the health-insurance premiums of disabled employees who are entitled to LTD benefits is an employee welfare benefits plan governed by ERISA. (R. 1.) Furthermore, Plaintiff claimed that FLEC violated that plan when it refused to reinstate him in FLEC's healthcare plan and waive the premiums. (*Id.*)

During discovery, Plaintiff served FLEC several written interrogatories. When asked whether FLEC has a policy or practice that employees who are awarded LTD benefits continue to be eligible to participate in FLEC's healthcare plan and, if so, to describe it, FLEC answered:

> FLEC has no written or other formal policy. FLEC has an unwritten practice that any current Fort Loudoun Electric Cooperative employee is entitled to a waiver of health insurance premiums for the individual or family coverage for the entire time the employee is deemed disabled by FLEC's long term disability carrier.

(R. 32-5 at 6.) FLEC also stated that it pays 100% of the premiums for eligible participants and that "Plaintiff's request was denied because he was terminated." (*Id.* at 6-7.)

FLEC moved for summary judgment, and Plaintiff moved for judgment on the pleadings. Plaintiff claimed that, for the first time, FLEC conditioned eligibility under the policy on not only LTD recipient status, but also continued employment or good standing with the company. (Appellant's Br. 16.) FLEC argued that its unwritten policy was not an ERISA plan and that even if it was, former employees are not eligible to receive benefits under it.

The district court granted FLEC's motion for summary judgment on March 22, 2011. (R. 39.) The district court found that FLEC's policy to waive health-insurance premiums for employees who receive LTD benefits was akin to a severance package. As a result, it analyzed whether the policy constituted an employee welfare benefits plan under ERISA using the criteria this Court has articulated for evaluating severance plans. (*Id.* at 8-10.) After finding that FLEC did not exercise any discretion over who was eligible for benefits under the policy or what they received, the district court held that the policy was not covered by ERISA and, therefore, the court did not have jurisdiction over Plaintiff's complaint. (*Id.* at 10.)

There was also an issue regarding whether Plaintiff properly amended his complaint to add another cause of action under ERISA for FLEC's failure to properly provide plan documents and information when requested. The only evidence of Plaintiff's motion to amend is on page 20 of his brief in support of his motion for judgment, where he states "[i]n the event that the court finds the terms of the plan to be as FLEC asserts . . . , then Plaintiff moves to amend his complaint to include a cause of action for penalties under ERISA § 502." (R. 32 at 20.) Defendant opposed the purported motion as untimely, but the district court simply held that no motion was ever filed. (R. 39 at 11.) The court held that "[s]uch a filing, even if it were not otherwise mooted, would not be considered

7

by this court. A motion must be filed as a separate, freestanding document." (*Id.*) This timely

appeal followed.

## DISCUSSION

### I.     Is Plaintiff Eligible for Benefits Under FLEC's Policy?

Plaintiff argues that the district court erred when it determined that FLEC's unwritten policy

of waiving health-insurance premiums for employees who are deemed eligible to receive LTD

benefits was not an ERISA benefit plan. Whether the policy is an ERISA plan is a question of fact

"to be answered in light of all the surrounding circumstances and facts from the point of view of a

reasonable person." *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 847 (6th Cir. 2006) (citing

*Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434 (6th Cir. 1996)). However, this issue is

moot if Plaintiff is not eligible to receive benefits under FLEC's policy.

FLEC argues that even if its policy is governed by ERISA, the district court's decision should

be affirmed because Plaintiff is not eligible to receive the benefits he requests due to his termination

for dishonesty on May 2, 2005. This is because the policy agrees to waive premiums for the

company's healthcare plan, and Plaintiff was no longer eligible to enroll in that healthcare plan after

he was fired. Plaintiff contends that the policy only requires recipients to be deemed entitled to LTD

benefits by CBA after becoming disabled while an employee for FLEC. For the reasons that follow,

we find that FLEC's arguments are more persuasive.

FLEC participates in a group health-insurance plan offered by Blue Cross Blue Shield of

Tennessee ("BCBST"). (Appellee's Br. 10.) Under the policy, FLEC waives the premium fees of

the BCBST plan for employees who are entitled to LTD benefits, for as long as they receive LTD

8

benefits. Attachment D sets out the BCBST plan's eligibility requirements. (R. 26 at 10.) The plan distinguishes between Subscribers, who are the plan sponsor's employees and enroll in the plan, and Covered Dependents of Subscribers. (*Id.*) In order to be eligible to enroll in the plan as a Subscriber, one must be "a full-time Employee of the Group who is Actively at Work." (*Id.*) BCBST defines the term "Actively At Work" in the following way:

> **Actively At Work** – The performance of all of an Employee's regular duties for the Group on a regularly scheduled workday at the location where such duties are normally performed. An Employee will be considered to be Actively At Work on a non-scheduled work day (which would include a scheduled vacation) only if he or she was Actively At Work on the last regularly scheduled work day. An Employee who is not at work due to a health-related factor shall be treated as Actively At Work for purposes of determining Eligibility.

(R. 25 at 19.)

Plaintiff does not meet the Actively At Work requirement. After he was terminated in May 2005, Plaintiff no longer was "not at work due to a health-related factor." (*Id.* at 19.) Plaintiff argues that he satisfies the Actively At Work requirement because he was Actively At Work until he became disabled. (Appellant's Reply Br. 16.) This interpretation of the BCBST plan is not persuasive. Although Plaintiff may also have been prohibited from working because of his disability, after May 2005, he would not have been at work irrespective of his injuries.

Because Plaintiff does not meet the Actively At Work requirement, he is not eligible to enroll in the BCBST plan. Attachment D of the BCBST plan also outlines the consequences of an employee losing their eligibility. It states: "Coverage for a Member who has lost his/her eligibility shall *automatically* terminate at 12:00 midnight on either: (1) the last day of the month during which that loss of eligibility occurred; or (2) the day that loss of eligibility occurred." (R. 26 at 11

(emphasis added).)  This language demonstrates that FLEC had no discretion regarding Plaintiff's continued enrollment in the BCBST plan.  Consistent with this policy, on May 2, 2005, FLEC notified Plaintiff in writing that his health insurance was terminated after he was fired for violating company policies.  (R. 30 at 4.)  The letter also informed Plaintiff of his right under COBRA to continue health insurance coverage with BCBST, at his expense, for 18 months.  (*Id.*)

Plaintiff argues that the requirement that he must continue to be an employee in good standing was "simply invented" in order to deny his claim.  (Appellant's Br. 31.)  But BCBST's eligibility requirements have never changed, and they are not within FLEC's control.  Plaintiff's inability to satisfy the Actively At Work requirement also distinguishes him from other employees who currently receive LTD benefits and have their insurance premiums waived by FLEC.  Because Plaintiff does not, and cannot, satisfy BCBST's eligibility requirements, FLEC cannot provide the relief Plaintiff seeks.[2]  FLEC cannot waive the insurance premiums for a coverage Plaintiff is unable to receive.  Plaintiff was ineligible for BCBST's plan when he made his claim for coverage in 2009, and he remains ineligible today.  As a result, we affirm the district court's decision to grant Defendants' motion for summary judgment.[3]  Furthermore, we need not decide whether FLEC's

---

[2] While arguing before the district court, Plaintiff claimed that "FLEC should be ordered to retroactively reinstate the Hills into the FLEC healthcare plan as of [February 28, 2005], and pay any outstanding medical claims from that period which would have been covered under the healthcare plan. (R. 32 at 20.)  On appeal, Plaintiff "seeks retroactive and ongoing enrollment in the Fort Loudoun Electric Cooperative Healthcare Plan." (Appellant Br. 6.)

[3] Although the district court did not determine whether Plaintiff was eligible to receive the benefits he requested under FLEC's policy, the panel "can affirm the district court's judgment on any ground supported by the record, even grounds that are different from those considered or relied upon by the district court." *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 403-04 (6th

policy constitutes an ERISA plan or whether the district court's characterization of the policy as "akin to a severance program" was proper.

## II. Did the District Court Err by Holding Plaintiff Failed to Move to Amend His Complaint?

In the proceedings below, Plaintiff attempted to move to amend his complaint in order to add an additional cause of action for statutory penalties under ERISA § 502(c), 29 U.S.C. § 1132(c). The only evidence of Plaintiff's motion to amend is on page 20 of his brief in support of his motion for judgment. There he stated, "[i]n the event that the court finds the terms of the plan to be as FLEC asserts . . . , then Plaintiff moves to amend his complaint to include a cause of action for penalties under ERISA § 502." (R. 32 at 20.) Defendant opposed the purported motion as untimely, but the district court simply held that no motion was ever filed. (R. 39 at 11.) The court held that "[s]uch a filing, even if it were not otherwise mooted, would not be considered by this court. A motion must be filed as a separate, freestanding document." (*Id.*)

This Court reviews a district court's decision to grant or deny a plaintiff's motion to amend for abuse of discretion. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). "A district court abuses its discretion when it fails to give a reason for denying the motion, applies an incorrect legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thompson v. City of Lansing*, 410 F. App'x 922, 928 (6th Cir. 2011) (quoting *Szoke v. United Parcel Serv. of Am., Inc.*, 398 F. App'x 145, 152 (6th Cir. 2010)) (quotation marks

Cir. 2003) (citations omitted).

omitted). Legal conclusions the district court draws while making this decision, however, are reviewed *de novo*. *Id.*

FLEC argues that the district court correctly determined that Plaintiff failed to properly submit a motion to amend because the attempted motion violated Eastern District of Tennessee Local Rule 15.1. That rule states:

> A party who moves to amend a pleading shall attach a copy of the proposed amended pleading to the motion. Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, shall, except by leave of Court, reproduce the entire pleading as amended and may not incorporate any prior pleading by reference. A failure to comply with this rule may be grounds for denial of the motion.

LR 15.1. Plaintiff admits that he failed to comply with the local rules with respect to filing a motion to amend, but argues that the local rule was not the reason the court denied Plaintiff's request. (Appellant's Reply Br. 18.)

Plaintiff "maintains that denying a motion to amend which is adequately supported by the facts and law solely for the reason that it was made in the body of a brief, rather than as a freestanding document, is reversible error." (*Id.* at 18-19.) Plaintiff cites *Hopkins v. Bowen*, 850 F.2d 417 (8th Cir. 1988), to support his claim that even though no formal motion was filed, the district court should have considered Plaintiff's request to amend because he stated the grounds for the motion with sufficient particularity and FLEC had sufficient notice and an opportunity to respond. In *Hopkins*, the Eighth Circuit held that a motion made in a memorandum in support of a motion for summary judgment was sufficient because it set forth the particular grounds for the motion. *Id.* at 420. *Hopkins* is distinguishable, however, because in that case, the court explicitly

12

found that the motion conformed with the Western District of Missouri's local rule regarding the form of motions. *Id.*

Plaintiff also claims that the district court's "[o]utright denial of his motion to amend was both legally incorrect and an abuse of discretion." (Appellant's Br. 41.) Plaintiff notes that the Federal Rules of Civil Procedure do not require a separate filing, but rather, simply that a motion be made in writing and state with particularity the grounds for seeking the order and the relief sought. (*Id.* (citing Fed. R. Civ. Pro. 7(b)(1).) As a result, Plaintiff argues that the district court's legal conclusion that it *could not* consider Plaintiff's motion was incorrect. (Appellant's Reply Br. 18.)

However, Plaintiff's analysis of the district court's ruling is unpersuasive. The court stated: "Such a filing, even if it were not otherwise mooted, *would not* be considered by this court. A motion must be filed as a separate, freestanding document." (R. 39 at 11 (emphasis added).) Even if the district court thought it had no discretion to consider the motion, it is not necessarily an erroneous legal decision. The district court did not rely on the Federal Rules of Civil Procedure in dismissing Plaintiff's purported motion. In light of the local rule, we find that the district court did not abuse its discretion in declining to address Plaintiff's purported motion to amend based on its procedural deficiencies.

## CONCLUSION

For the reasons stated above, we affirm the district court's decision to grant Defendant's motion for summary judgment and deny Plaintiff's motion for judgment.

13