**REVISED SEPTEMBER 18, 2014**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**
September 17, 2014

Lyle W. Cayce
Clerk

No. 13-20387

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Plaintiff

v.

SIMBAKI, LIMITED, doing business as Berryhill Baja Grill & Cantina;
PHILLIP J. WATTEL; SIMBAKI-I, INCORPORATED, doing business as
Berryhill Baja Grill & Cantina; BERRYHILL HOT TAMALES
CORPORATION, doing business as Berryhill Baja Grill & Cantina, also
known as Corporate Berryhill,

Defendants - Appellees

v.

LAURA BAATZ; KIMBERLY KULIG,

Intervenor - Plaintiffs - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.
EDITH BROWN CLEMENT, Circuit Judge:

Kimberly Kulig and Laura Baatz appeal the district court's dismissal of
their Title VII lawsuit against Berryhill Hot Tamales Corporation for failure
to exhaust administrative remedies. The district court based its exhaustion
holding on a determination that only pro se parties may invoke the judicially-

No. 13-20387

recognized exceptions to Title VII's named-party requirement. Because we determine that parties represented by counsel may too invoke the exceptions to the named-party requirement, we VACATE and REMAND for further proceedings consistent with this opinion.

## I.

## A.

Berryhill Baja Grill & Cantina is a chain restaurant with locations in Texas and Mexico. Individual Berryhill restaurants are either (1) "corporate stores" owned and operated by Berryhill's Corporate parent, Defendant Berryhill Hot Tamales Corporation ("Berryhill Corporate" or "Corporate"), or (2) franchise-locations operated by third-party owners.[1] Jeff Anon serves as the CEO of Berryhill Corporate.

Plaintiffs Kimberly Kulig and Laura Baatz worked for the Berryhill Baja Grill & Cantina on Montrose Street in Houston ("Berryhill Montrose" or "Montrose"). Berryhill Montrose is a franchise-location, and is owned and operated by Defendant Phillip Wattel.

Laura Baatz began work for Berryhill Montrose in 2003, though the story as to how she came to work for the Montrose location is both convoluted and disputed. Both parties agree that, after reading an advertisement in a local newspaper seeking bartenders, Baatz visited a Berryhill Corporate-owned restaurant to fill out a job application. And both parties also agree that she interviewed at the Berryhill Corporate-owned store the same day. The dispute concerns what happened next: Baatz claims that she was offered a job with Berryhill, and was sent over to the Berryhill Montrose location to fill out

---

[1] Berryhill Corporate franchises Berryhill Baja Grill & Cantina Restaurants through the Berryhill Franchise Corporation.

2

No. 13-20387

some pro forma paperwork and then begin work.  Berryhill Corporate counters that Baatz was merely referred to the Berryhill Montrose location, and she had to apply for, and be offered, a job before beginning work.  But regardless of whether Baatz was actually hired before she arrived at the Berryhill Montrose, both parties agree that Baatz then visited the Montrose restaurant and interviewed with Wattel.  Baatz then began work.

By contrast, the story of how Plaintiff Kimberly Kulig came to work for Berryhill Montrose is undisputed.  Kulig interviewed with, and was hired by, Berryhill Montrose in 2003.

While employed by Berryhill Montrose, Baatz and Kulig were sexually harassed by Wattel.  Baatz and Kulig allege that he:

- Groped, slapped, and bit them.  Some of the slaps were reportedly so hard that they caused bruises.
- Harassed them verbally.
- Asked them to sign napkins giving him permission to grab their bottoms.
- Exposed himself.
- Kissed them without permission.
- Showed up to work drunk.

Wattel *concedes* that:

- Berryhill Montrose was a "grab-assy place."
- He patted Kulig on her bottom multiple times, and once spanked her so hard that she bruised.
- He bit Kulig.
- He asked Baatz to go out of town with him.
- He asked Baatz to have a child with him, but not in a "meaningful" way.

3

No. 13-20387

- He invited Baatz to join him on his boat, with the invitation "Pants okay, but not necessary." Wattel argues he was just being helpful and advising her regarding the weather.

- After receiving complaints regarding the sexual harassment, he posted a sign indicating that "Notice: sexual harassment in this area will not be reported. However, it will be graded." Wattel claims the sign was a joke that was intended to lighten the mood.

Baatz worked for Berryhill Montrose from 2003 until 2005, when she quit on account of the sexual harassment. However, Baatz rejoined Berryhill Montrose three weeks after quitting. She then worked until February 2008, when she either left (as she claims) or was fired (as Berryhill Montrose claims), after an incident where she left the bar unattended to go pick up medicine for her heart palpitations. Baatz alleges that her heart palpitations were brought on by Wattel's sexual harassment.

Kulig's employment with Berryhill Montrose follows a somewhat similar pattern. After a disagreement regarding the tip jar in 2005, Wattel fired her. Kulig then attempted to secure employment with another Berryhill restaurant, but was precluded from doing so by a Berryhill policy that prevented employees from transferring between Berryhill restaurants without the permission of their former boss. Kulig rejoined Berryhill Montrose in 2006, after being promised that she would be treated better. When her treatment did not improve, she quit again in December 2007.

**B.**

Fed up with the sexual harassment, Kulig and Baatz filed EEOC charges. Kulig filed in the fall of 2007, Baatz in spring of 2008. John Shely, a partner at Andrews Kurth LLP, and a patron of Berryhill Montrose, represented Baatz and Kulig when they filed their charges. The charges both

4

No. 13-20387

appear to name the same entity, and complained of similar misconduct on Wattel's part:

- Kulig's charge named "Berryhill Baja Grill" and listed the defendant's street address as "3407, Montrose Boulevard, Suite A-8, Houston, TX 77006." The charge noted that Kulig had "been subject to unwelcome conduct of a sexual nature since January 2007," and alleges that after complaining about the "unwelcome conduct" her "hours were reduced." Kulig's charge specifically notes that "Philip Wattel[], Owner, informed me of the reduced and restricted hours."

- Baatz's charge also names the "Berryhill Baja Grill," provides a Montrose Boulevard street address, and explains that she was "subjected to unwelcome sexual conduct by Mr. Philip Wat[t]el, Owner." Baatz's charge further noted that "[t]he working environment became so intolerable that I was left no alternative but to quit my job."

Even though the charges did not discuss Berryhill Corporate, EEOC twice (once for Kulig and once for Baatz) served notice on Berryhill Corporate that charges of discrimination had been filed against "your organization." EEOC addressed the letters to Jeff Anon, who is Berryhill Corporate's CEO. Berryhill Corporate concedes it received the letters.

Kristine Troger, who was at the time Berryhill Corporate's Director of Operations and had previously dated Wattel,[2] led Berryhill Corporate's response to the EEOC charges.

---

[2] Troger now runs her own Berryhill franchise restaurant. The record leaves little doubt as to Troger's thoughts on Wattel. When Berryhill Corporate received notice of the charges against Wattel, she wrote an email to Anon indicating that the charges are "BAD," "toxic for Berryhill," and "beg[ging] [Anon] not to do business with [Wattel] anymore."

No. 13-20387

- With respect to Kulig's charge, Troger called EEOC and informed them that Berryhill Montrose was not a "corporate store," and Berryhill Corporate did not want to be involved. Troger asked that Berryhill Corporate be released from the charge by EEOC.

- With respect to Baatz's charge, Troger sent a letter to EEOC again indicating that they had nothing to do with Wattel's operation. The letter explained that "Mr. Wattel is not an owner or operator of Berryhill Hot Tamales Corp. He is the franchisee of the Montrose location of Berryhill Baja Grill." The letter noted that "Mr. Wattel is solely responsible for answering to these allegations and Berryhill [Corporate] wishes to be removed as a party to the investigation."

Beyond Troger's limited communications with EEOC, Berryhill Corporate's precise role during EEOC proceedings remains murky and a source of dispute. Corporate clearly knew that EEOC proceedings were occurring, and CEO Anon testified that Berryhill Corporate could have remained involved in the investigation had it chosen to. Further, internal EEOC documents indicate that EEOC considered Corporate to be a respondent in the matter, and EEOC's call log suggests that Troger received at least one phone call from EEOC that she did not return. However, Berryhill Corporate does not appear to have been invited to the fact-finding conference, and the majority of the notices relating to EEOC proceedings appear to have gone solely to Wattel at Berryhill Montrose.

## C.

After its investigation was completed, EEOC determined that Wattel had engaged in sustained harassment in violation of Title VII. EEOC filed suit against Berryhill Montrose in the Southern District of Texas in 2012. A couple of months later Baatz and Kulig intervened, and added Wattel, Berryhill

6

No. 13-20387

Corporate, and an additional Berryhill Montrose entity as defendants. Berryhill's Corporate's Title VII liability was based on either a single or joint-employer liability scheme. Baatz and Kulig also pled state law claims against Berryhill Corporate, but those claims were dismissed under Rule 12(b)(6), and not appealed here.

Critically for our purposes, Berryhill Corporate moved for summary judgment arguing that (1) Kulig and Baatz failed to exhaust their administrative remedies against Corporate because they did not name Corporate in their EEOC charges, (2) Kulig and Baatz could not show that Corporate was liable under Title VII through either a single employer or a joint employer liability scheme.

The district court agreed with Corporate that Baatz and Kulig did not exhaust their administrative remedies against Corporate because Baatz and Kulig did not name Berryhill Corporate in the charges they filed with EEOC. In explaining the decision, the court further indicated that Baatz and Kulig could not invoke any of the judicially-recognized exceptions to Title VII's named-party requirement because they were represented by counsel when they filed their charges. The district court did not make a single or joint employer liability determination.

After summary judgment was granted, the district court severed Berryhill Corporate from the lawsuit, and Baatz and Kulig timely appealed. On appeal, Baatz and Kulig argue (1) the district court erred in determining that they did not name Berryhill Corporate in their EEOC charges, and (2) even if they did not name Berryhill Corporate in the EEOC charges, the district court erred when it determined that only pro se parties may invoke the judicially-recognized exceptions to Title VII's named-party requirement.

7

No. 13-20387

## II.

We review the district court's grant of summary judgment de novo. *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014).  Summary judgment is appropriate when the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *Id.*  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  *Id.*  We view the facts in the light most favorable to the non-moving party.  *Id.*  We may affirm summary judgment on any basis raised below and supported by the record.  *Id.*

## III.

Baatz and Kulig first argue that the district court erred in determining that they did not name Berryhill Corporate in their EEOC charges.  We agree with the district court that Baatz's and Kulig's EEOC charges did not name Berryhill Corporate.

We recognize a general rule that "a party not named in an EEOC charge may not be sued under Title VII." *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1988).  When applying that general rule, however, courts liberally construe Title VII's naming requirement so as to not frustrate claimants with needless procedural roadblocks.  *See, e.g., Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 456 (11th Cir. 2010); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 905-06 (7th Cir. 1981); *Romero v. U. Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980).  One such way courts do so is avoiding "hypertechnical" readings of charges;  for example, when the party named in the EEOC charge is legally identical to the party that

No. 13-20387

is sued, courts permit the suit to go forward. *See, e.g., Onan v. Cnty. of Roanoke*, 52 F.3d 321, at \*2 (4th Cir. 1995).

Baatz and Kulig claim that they satisfied the named-party requirement because they used Berryhill Corporate's trade name ("Berryhill Baja Grill") in the EEOC charges, which is all that they imply is required to comply with Title VII's naming requirement. But Baatz's and Kulig's argument improperly tries to stretch a judicial recognition that sometimes parties will accidently use only a company's trade name on EEOC charges, even though the company is "informally referred to in the body of the charge"[3]—and a corresponding judicial willingness to find that the company was named in such a charge— into a blanket rule that the use of a trade name is always sufficient even when there is no other indication anywhere in the charge that the company violated Title VII. We decline to sanction such an expansion, which would seriously undermine the purposes of the named party requirement.

We conclude from a review of these particular charges that Baatz and Kulig only named Berryhill Montrose (and not Berryhill Corporate). "Berryhill Baja Grill" is the trade name not only for Berryhill Corporate, but also for franchisees such as Berryhill Montrose. The charges list the address for Berryhill Montrose—not Berryhill Corporate—and further note, despite record evidence indicating that both Baatz and Kulig knew that Jeff Anon was the leader of Berryhill Corporate,[4] that Wattel was the "owner" of the Berryhill company named in the charge. Nowhere in the charges do either Baatz or Kulig discuss the behavior of Berryhill Corporate. Given the multiple

---

[3] *Romero*, 615 F.2d at 1311.

[4] For example, Laura Baatz noted that "Mr. Anon is the head of Berryhill corporate as I understand it" in a letter to EEOC investigator Patrica Palacios, and Kimberly Kulig noted Jeff Anon and Kristine Troger's corporate inspections during her deposition.

indications in the charges that Baatz and Kulig were referring to Berryhill Montrose, and Berryhill Montrose alone, Baatz and Kulig cannot claim that the charges named Berryhill Corporate simply because they used the Berryhill trade name.

Baatz and Kulig counter that they must have named Berryhill Corporate in the charges because after the charges were filed EEOC provided Berryhill Corporate with notice that charges had been filed against "your organization." But just as the Supreme Court found it inappropriate to look to EEOC's post-charge notices to determine what constitutes a charge in *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 403-04 (2008),[5] we similarly believe it would be inappropriate for us to look to a post-charge notice to determine whether a party was named.  It would certainly be incongruous, to the say the least, for us to look to EEOC's notification to determine whether the charge named a party when we cannot look to the notification to determine what constitutes a charge.  Accordingly, notwithstanding EEOC's choice to send a post-charge notice of proceedings to Berryhill Corporate, we conclude—given the face of the charges—that Baatz and Kulig did not name Berryhill Corporate in the charges.

## IV.

Because Baatz and Kulig did not name Berryhill Corporate in their EEOC charges, our next step is to determine whether they may invoke the judicially-recognized exceptions to Title VII's named-party requirement. The

---

[5] The *Holowecki* Court explained that it "would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control."  552 U.S. at 404.

district court held that they could not on the grounds that only pro se parties may invoke the exceptions to the named-party requirement.

Baatz and Kulig argue that the district court erred in making that determination because parties represented by counsel should also be able to invoke the judicially-recognized exceptions to the named-party requirement. We agree with Baatz and Kulig.

**A.**

The starting point for determining whether parties represented by counsel may invoke the exceptions to the named-party requirement is to lay out what exactly those exceptions are. The circuits have articulated a variety of different standards for determining whether an unnamed party may be sued under Title VII.

The Third Circuit looks at whether the party that appeared before EEOC adequately represented the unnamed party's interests. In *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir. 1978), the court set out a four-part test to determine whether there was sufficient identity-of-interest between the named and the unnamed party so that the unnamed party could be sued in court despite not being named in the charge:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
> 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
> 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
> 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 888 (internal line breaks added).

The Seventh Circuit, while accepting the Third Circuit's *Glus* test, has also recognized that certain parties with actual notice of the EEOC proceedings may also be sued. *See, e.g.*, *Eggleston*, 657 F.2d at 905-07. The Seventh Circuit justifies the actual notice exception on the grounds that the named-party requirement is meant to "give[] the employer some warning of the conduct about which the employee is aggrieved and afford[] the EEOC and the employer an opportunity to attempt conciliation without resort to the courts." *Alam v. Miller Brewing*, 709 F.3d 662, 666 (7th Cir. 2013) (internal quotation marks omitted). As such, if "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance," the purpose of the named-party requirement has been accomplished, and "the charge is sufficient to confer jurisdiction over that party." *Eggleston*, 657 F.2d at 905.[6]

The Ninth Circuit, by contrast, bases its exception on predictability. In *Viswanathan v. Leland Stanford Junior University*, 1 F. App'x 669 (9th Cir. 2001), the Ninth Circuit observed that "[t]he failure to name a party in an EEOC charge precludes the possibility of suing under Title VII unless the unnamed party was 1) involved in acts which were the subject of the EEOC charge, or 2) should have anticipated that it would be named in a Title VII

---

[6] Some courts refer to all of the judicially-recognized exceptions to the named-party requirement as the identity-of-interest exception even though the courts are applying both the *Glus* identity-of-interest test and *Eggleston* actual notice test. *See, e.g.*, *Szoke v. United Parcel Serv. of Am.*, 398 F. App'x 145, 154 (6th Cir. 2010); *Romero*, 615 F.2d at 1311. In order to avoid confusion, this opinion will only refer to the "identity-of-interest exception" in the narrow sense so as to reference the Third Circuit's *Glus* test.

No. 13-20387

suit." *Id.* at 672 (internal quotation marks omitted); *see also Sosa v. Hiraoka*, 920 F.2d 1451, 1458-59 (9th Cir. 1990).

Finally, the Tenth Circuit appears to loosely follow the Third Circuit's *Glus* test, *see, e.g.*, *Romero*, 615 F.2d at 1311-13, but has further explained that "[d]epending on the facts" of a case "additional factors may be relevant," *id.* at 1312. So, for example, the Tenth Circuit has determined a plaintiff may sue an unnamed party when the named and unnamed party are shown to constitute a single employer. *See, e.g.*, *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1185 (10th Cir. 1999).

The remaining circuits that have weighed in on the question (the Second, Sixth, Eighth, and Eleventh Circuits) generally apply the Seventh Circuit's standard, which permits parties to invoke either the *Glus* identity-of-interest exception or the *Eggleston* actual notice exception. *See, e.g.*, *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991); *Romain v. Kurek*, 836 F.2d 241, 245-46 (6th Cir. 1987); *Greenwood v. Ross*, 778 F.2d 448, 451 (8th Cir. 1985); *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1359 (11th Cir. 1994).[7] Our circuit—as our district courts have recognized—also follows that approach. *See, e.g.*, *Way*, 840 F.2d at 307 (citing *Romain*, 772 F.2d 281, 283 (6th Cir. 1985)); *McKee v. McDonnell Douglas Technical Servs. Co.*, 700 F.2d 260, 265 (5th Cir. 1983) (citing *Eggleston*, 657 F.2d at 905); *Walsh v. Aries Freight Sys., L.P.*, 2007 WL 3001650, at *4 (S.D. Tex. Oct. 12, 2007) (Rosenthal, J.).[8] As

---

[7] Like the Tenth Circuit, the Eleventh Circuit also realizes that the tests for the judicial exceptions to the named-party requirements are not meant to be "rigid," and accordingly "other factors may be relevant depending on the specific facts of the case." *Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 457 (11th Cir. 2010) (internal quotation marks and alterations omitted). As such, the Eleventh Circuit also sometimes considers "whether an investigation of the unnamed party could have reasonably grown out of the EEOC charge." *Id.* (internal quotation marks and alterations omitted).

[8] We are aware that at least one Fifth Circuit case only examines the *Glus* factors. *See, e.g.*, *Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 286 (5th Cir. 2008).

such, we examine whether a party can meet either (1) the Third Circuit's *Glus* test for whether there is an identity-of-interest or (2) the Seventh Circuit's *Eggleston* test for whether there was actual notice of the charge and an opportunity to participate in conciliation.

**B.**

But can represented parties invoke the exceptions to the named-party requirement?  District courts across the country have split on the question. *See, e.g.*, *EEOC v. Bass Pro Outdoor World, LLC*, 884 F. Supp. 2d 499, 528-29 (S.D. Tex. 2012) (citing cases), *reconsidered in other parts*, 2014 WL 3795579 (S.D. Tex. 2014).  And the parties point us to no circuit court decisions addressing the precise issue.  We conclude that parties represented by counsel can invoke the exceptions to the named-party requirement.

First, allowing represented parties to invoke the exceptions as well is more consistent with the way this court treats pro se litigants.  Despite our general willingness to construe pro se filings liberally, we still require pro se parties to fundamentally "abide by the rules that govern the federal courts." *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013) (internal quotation marks omitted).[9]  Pro se litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief,[10] serve defendants,[11] obey discovery orders,[12] present summary

---

However, even Berryhill Corporate's brief recognizes the applicability of both the actual notice and identity-of-interest exceptions to the named-party requirement—Berryhill Corporate just argues that the exceptions are not met here.

[9] *See, e.g.*, *Rolen v. City of Brownfield*, 182 F. App'x 362, 365 (5th Cir. 2006) (requiring compliance with Federal Rules of Civil Procedure); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (requiring compliance with the Federal Rules of Appellate Procedure).

[10] *See, e.g.*, *Champion v. United States*, 421 F. App'x 418, 423 (5th Cir. 2011); *Pickett v. Nunn*, 367 F. App'x 536, 537 (5th Cir. 2010).

[11] *See, e.g.*, *Ayika v. Sutton*, 378 F. App'x 432, 434 (5th Cir. 2010); *Rochon v. Dawson*, 828 F.2d 1107, 1110 (5th Cir. 1987).

[12] *See, e.g.*, *Franklin v. Comm'r*, 297 F. App'x 307, 310 (5th Cir. 2008).

judgment evidence,[13] file a notice of appeal,[14] and brief arguments on appeal.[15] Fashioning a wholly separate set of exhaustion requirements for pro se parties—rather than simply construing pro se charges more liberally—would therefore be incongruous with our general requirement that pro se parties follow the rules of federal court. *Cf. Holender v. Mut. Indus. N. Inc.*, 527 F.3d 352, 357 (3d Cir. 2008) (rejecting the argument that represented parties should be held to higher standard in determining what constitutes a charge).

Second, this result is more consistent with our "well recognized" practice of liberally construing Title VII's requirements in light of the statute's remedial purpose. *See Cooper v. Lewis*, 644 F.2d 1077, 1084 (5th Cir. Unit A 1981). As our sister circuits have explained, the entire point of the judicially-recognized exceptions to the named-party requirement is to permit suits to go forward where, despite the plaintiff's failure to name the defendant in the charges, the purposes of the named-party requirement have nonetheless been met. *See, e.g., Eggleston*, 657 F.2d at 905-06; *Glus*, 562 F.2d at 888. We do not perceive a reason why the presence of plaintiff's counsel is necessarily determinative of that inquiry such that a categorical rule against represented parties invoking the exceptions is appropriate. Whether a party is represented by counsel, for example, tells us very little about whether the underlying purposes of Title VII's named-party requirement—which largely concerns whether the allegedly discriminating party has received sufficient notice either through actual notice (*Eggleston*) or a proxy (*Glus*)—have been met. We therefore reject a per se rule that parties represented by counsel cannot invoke the judicially-recognized exceptions to the named-party requirement.

---

[13] *See, e.g., Rolen*, 182 F. App'x at 365.

[14] *See, e.g., Baca v. Texas*, 462 F. App'x 484, 485-86 (5th Cir. 2012).

[15] *See, e.g., Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).

**C.**

Because the district court granted summary judgment on the grounds that Baatz and Kulig, as represented parties, could not rely on the exceptions to the named-party requirement, the district court did not determine whether Baatz and Kulig could fit within either the *Glus* or *Eggleston* exceptions. We accordingly VACATE the district court's grant of summary judgment for Berryhill Corporate and REMAND for further proceedings consistent with this opinion, so that the district court can determine in the first instance whether a grant of summary judgment for Berryhill Corporate is appropriate. We express no view on whether summary judgment should be granted.[16]

**V.**

We VACATE the district court's grant of summary judgment for Berryhill Corporate, and REMAND for further proceedings consistent with this opinion.

---

[16] Berryhill Corporate nonetheless urges us to affirm the district court on the alternative grounds that Baatz and Kulig cannot meet the exceptions under the facts of this case, or that Berryhill Corporate is not a single or joint employer. Though we may affirm on any basis supported by the record, our choice to do so is ultimately discretionary. Given the fact intensive nature of the inquiries that Berryhill Corporate asks us to undertake, as well as the able district court's familiarity with this lawsuit, we believe that this case is best returned to the district court.