WIENER, Circuit Judge,
dissenting:
I respectfully dissent in the firm conviction that the record evidence, as presented *1031 to the district court on summary judgment, compels affirmance of its holdings that (1) Humana is a fiduciary with statutory standing to bring an action under 29 U.S.C. § 1132(a)(3) on behalf of the Plan, and (2) Humana lawfully exercised its discretion, as authorized by the Plan, to recover the funds that Nguyen had received by virtue of underinsured motorists insurance.
I. Standing
As noted in the majority opinion, Humana is designated as the Plan Manager for API’s ERISA health benefits plan. The PMA states:
[Humana] will provide ‘Subrogation/Recovery’ services (in addition to routine application of the coordination of benefits provisions of the Plan) for identifying and obtaining recovery of claims payments from all appropriate parties through operation of the subrogation or recovery provisions of the Plan, (a) Subrogation/Recovery services will be provided by the Plan Manager following its normal procedures and such services may be performed by subcontractors and/or counsel selected by [Humana].[1]
Three points here. First, the PMA distinguishes Humana’s express discretionary authority to initiate and conduct subrogation and recovery services from its “routine application” of benefits functions — the type of activity considered “ministerial” and thus insufficient to support a finding of fiduciary status.[2] Second, the PMA recognizes that in Humana’s performance of subrogation and recovery services, it will “follow[ ] [.Humana’s ] normal procedures” — not those of API — another hallmark of discretion.[3] And, third, the PMA gives Humana the option — discretion—to select its own subcontractors and counsel to assist in performing subrogation and recovery services that it conducts on behalf of the Plan.
Moreover, the PMA contains a descriptive list of discrete activities that constitute the “Subrogation/Recovery” services that Humana is authorized to provide in its discretion:
(1) Investigation of claims and obtaining additional information to determine if a person or entity may be the appropriate party for payment,
(2) Presentation of appropriate claims and demands for payment to parties determined to be liable,
(3) Notification to Participants that recovery or subrogation rights will be exercised with respect to a claim, and
*1032 (4) Filing and prosecution of legal proceedings against any appropriate party for determination of liability and collection of any payments for which such appropriate party may be liable.
The scope of these services and the discretion inherent in the way that Humana may choose to perform them further compels the conclusion that it is vested with discretionary authority.[4] The other plan documents in the record, viz., the NCD and SPD — which we review in pari materia with the PMA — lend further support to the conclusion that Humana is a fiduciary of the Plan.[5]
Examine first the NCD, which only Nguyen contends constitutes the Plan.[6] The “Claims Cost Management” section of the NCD states: “Humana retains a percentage of recovery on all cases they work.... Humana will pay for any legal expenses we/Humana incur based on Humana’s decision to retain legal counsel,” and “[o]nce the Plan pays, we [Humana] have a contractual/equitable right to request money back from the responsible appropriate party or their insurance carrier.” [7]
Turn next to the SPD, the instrument that Humana insists constitutes the Plan. Not surprisingly, the SPD tells the same story as does the NCD, i.e., that Humana is accorded discretion to pursue subrogation and reimbursement on behalf of the Plan: “This Plan shall be repaid the full amount of the covered expenses it pays from any amount received from others for the bodily injuries or losses which necessitated such covered expenses.” The provisions of the SPD that accompany this declaration set out Humana’s “Right to Collect Needed Information,” as well as each Plan participant’s “Duty to Cooperate in Good Faith”:
*1033 You must cooperate with Humana and when asked, assist Humana by.... [providing information about other insurance coverage and benefits, including information related to any bodily injury or sickness for which another party may be liable.... and [ ] [providing information Humana requests to administer this Plan.
You are obliged to cooperate with Humana in order to protect this Plan’s recovery rights.... You will do whatever is necessary to enable Humana to enforce this Plan’s recovery rights and will do nothing after loss to prejudice , this Plan’s recovery rights.... Failure of the covered person to provide Humana such notice or cooperation ... will be a material breach of this Plan.... [8]
Read in pari materia, as they must be, the PMA, NCD, and SPD all identify Humana as the entity vested with discretionary responsibility to pursue subrogation and recovery of claims on behalf of the Plan.
The majority opinion raises two principal objections to the district court’s determination that Humana is a fiduciary to the extent that it is charged with conducting subrogation and recovery services on behalf of the Plan: (1) The PMA defines the range of potential disputes covered by the contract, but does not make clear that Humana has the ultimate authority to decide whether to investigate or pursue a claim; and, (2) the district court failed to explain why Humana’s responsibilities as outlined in the subrogation and recovery clause are not merely ministerial in nature.
Consider first the majority opinion’s statement that the PMA “says nothing about who has the right to finally decide whether to investigate or pursue a claim,”[9] leading it to conclude that the district court erred in holding that Humana is an ERISA fiduciary. Although final decision-making authority can be persuasive evidence that an entity is a fiduciary, neither § 1002(21)(A) nor our case law holds that the converse is true, i.e., that an entity must possess “final” authority to qualify as a fiduciary of an ERISA plan.[10] Rather, “[t]o be fiduciaries, such persons must exercise discretionary authority and control that amounts to actual decision making power.” [11] This principle is illustrated by American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of the United States, wherein we held that “[the Plan Administratorj’s fiduciary status was not diminished by the trustees’ final authority to grant or deny claims or approve investments.”[12]
*1034 “The term fiduciary includes those to whom some discretionary authority has been delegated.”[13] The record evidence makes clear that, at a minimum, the PMA accords Humana some “discretionary authority,” even if not final authority, to conduct subrogation and recovery efforts on behalf of the Plan. Although the panel majority concludes that “considered in isolation, the subrogation and recovery services clause does not show that Humana had discretion over the Plan or its assets,” relying on the purported absence of language in the PMA assigning Humana final decision-making authority, this analysis fails to acknowledge the PMA’s straightforward language that Humana “will provide ‘Subrogation/Recovery’ services ... for identifying and obtaining recovery of claims payments from all appropriate parties.” [14] And, although the panel majority defends their position by claiming that “[questioning whether a party has final decision-making authority is simply one way of asking whether the Plan Administrator was actively supervising Humana,” this leads down yet another path: If the determinative factor is whether API was “actively supervising” Humana, rather than whether the PMA accorded Humana final decision-making authority, the panel majority should ground its analysis thusly. And, I must add, Nguyen adduced no credible evidence that API actively supervised Humana’s provision of subrogation and reimbursement services on behalf of the Plan.[15]
Consider next the panel majority’s criticism of the district court for failing to explain why the duties outlined in the PMA are not ministerial in nature, observing that they resemble the tasks performed by law firms and collections agencies. But this criticism is circular and thus self-defeating: By ruling that Humana’s responsibilities are discretionary in nature, the district court’s inescapable corollary implication is that Humana’s duties were not ministerial; they cannot be both.[16]
*1035 One final point. The panel majority-states that, on remand, “Humana may be able to adduce facts showing that API never set out a framework of policies and procedures as promised, or that it did not supervise Humana’s collection activities. But the PMA alone does not show either failure.” I acknowledge that Humana, as the moving party on summary judgment, had the initial burden of adducing evidence that establishes its standing to sue under § 1132(a)(3).[17] But, “once the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the nonmoving party to come forward with competent summary judgment evidence establishing the existence of a material factual dispute.”[18] If evidence existed that API actively supervised Humana, or that Humana operated solely within API’s framework of policies, it was Nguyen’s burden to adduce such evidence in his opposition. Instead, Nguyen presented only an affidavit prepared by API’s Human Resources Director, Ms. Amy Manuel, in which her testimony contradicted the plain terms of the PMA as well as those of the Plan.[19] Remanding the case for Humana to adduce the absence of evidence that would establish its standing represents a fishing expedition with no end.
As the record evidence compels the conclusion that Humana has discretion to pursue subrogation and reimbursement on behalf of the Plan, I would affirm the district court’s summary judgment that (1) Humana is an ERISA fiduciary by virtue of its discretion to seek subrogation and reimbursement on behalf of the Plan, and (2) Humana therefore has standing to bring this action.[20]
II. Merits
The merits of this case are not addressed in the majority opinion because it remands for further consideration of the threshold issue of standing. As I would affirm Humana’s standing, however, I briefly address the merits of the case. At issue is whether the terms of the Plan support Humana’s efforts to recover, on behalf of the Plan, the funds that Nguyen received by virtue of underinsured motorists insurance.
Continuing to rely on the NCD only, Nguyen contends that it shields him from Humana’s recovery, pointing to Ms. Manuel’s affidavit. In her affidavit, Ms. Manuel, who also serves as Plan Administrator, *1036 avers that API interprets the Plan to bar recovery of any payment that a Plan participant receives by virtue of his own insurance policy. On appeal, Nguyen asserts that Ms. Manuel’s interpretation is consistent with the NCD, which, he contends, limits the Plan’s right of reimbursement and subrogation to recovering from the “responsible appropriate party or his insurance carrier” — who, insists Nguyen, could never be a Plan participant or his insurance carrier because a participant could not be responsible for injuring himself.[21]
Although the parties dispute which document constitutes the Plan, neither they nor I dispute that Ms. Manuel, as the Plan Administrator, is vested with discretionary authority to interpret the Plan. And, when an ERISA health benefits plan vests the plan administrator with discretionary authority to construe its terms, courts review such administrator’s denial of benefits for abuse of discretion.[22] The same principle applies to a plan’s assertions of rights to reimbursement and subrogation.[23] This means that, under de novo review, the plan administrator’s decision is assessed on appeal “from the same perspective as did the district court, and we directly review the Plan’s decision for an abuse of discretion.” [24]
Courts apply a two-step process to determine whether an ERISA plan administrator’s interpretation constitutes an abuse of discretion. They first consider whether that interpretation is legally correct; if so, the inquiry ends. If deemed legally incorrect, the court then considers whether the interpretation is also an abuse of discretion and thus reversible. To determine whether an administrator’s interpretation is legally correct, the court evaluates several factors: (1) whether the administrator gives the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) whether any unanticipated costs would result from different interpretations of the plan.[25] As noted, Ms. Manuel’s interpretation would prohibit the Plan from seeking reimbursement from Nguyen’s underinsured motorist recovery: “The terms of *1037 the API Employee Benefits Plan do not allow a claim for subrogation or reimbursement from an uninsured or underinsured motorist policy, nor any other policy of insurance secured by the Plan participant.”
But, Ms. Manuel’s interpretation is directly contradicted by the plain language of the NCD,[26] which states: “Reimbursement allows the Plan, by contractual right, to recover the money paid on behalf of the covered person, when benefits are paid and the covered person recovers monetary damages from the responsible appropriate party.” Here, Nguyen recovered monetary damages on the basis of underinsured motorists insurance. The NCD does not define the term “responsible appropriate party,” but when we give the words of that term their plain and ordinary meanings, as we are required to do, only one conclusion makes sense: That term includes a Plan participant’s own insurers, not just those of third parties.[27]
Moreover, even if we were to determine that the term “responsible appropriate party” is ambiguous (which I would not), we would be bound to construe the term as closely as possible to the SPD,[28] which states:
The Plan shall be repaid the full amount of the covered expenses it pays from any amount received from others for the bodily injuñes or losses which necessitated such covered expenses. Without limitation, ‘amounts received from others’ specifically includes, but is not limited to ... undeñnsured motoñsts, ‘no-fault’ and automobile med-pay payments or recovery from any identifiable fund regardless of whether the beneficiary was made whole.[29]
Thus, the SPD expressly confirms that amounts recoverable from others on behalf of the Plan include payments to members of the Plan from underinsured motorists insurance — the exact type of payment that Nguyen received but is now attempting to shield from recovery by Humana for the benefit of the Plan.
The only conclusion that I can draw from all of this is that, on its face, Ms. ' Manuel’s interpretation directly contra- ’ diets the plain terms of the NCD (and the other plan documents, including the SPD) and is therefore incorrect as a matter of law. And, even though a legally incorrect interpretation like Ms. Manuel’s does not automatically constitute an abuse of discretion, when, as here, an administrator’s interpretation flies in the face of the express and unambiguous terms of the Plan, it *1038 does indeed constitute an abuse of discretion.[30] As such, we must disregard her interpretation entirely. Thus, relying on the plain language of the NCD as incorporated in the SPD, I would hold that these terms create an equitable lien in favor of the Plan against Nguyen’s underinsured motorists recovery.
III. Conclusion
Finally, a few thoughts on the “brooding omnipresence” overarching this dispute that we simply cannot ignore. Nguyen is the son of API’s CEO, who is Ms. Manuel’s superior. I take judicial notice of the fact that the Nguyen family owns 100% of the stock of API, and employs only around 180 persons.[31] .The Plan covered and paid the medical expenses that Nguyen incurred as a result of an automobile accident, to the tune of about a quarter-million dollars. Nguyen subsequently received a second, virtually identical payout by virtue of underinsured motorists insurance. Despite the plain language of the PMA, the NCD, and the SPD — each of which empowers Humana to recover such payouts (as well as other types), up to the amount of covered expenses previously paid by the Plan — Nguyen, like Ms. Manuel, baldly and self-servingly (but incorrectly) denies that Humana, acting on behalf of the Plan, is entitled to do so.[32] Moreover, relying on the affidavit prepared by Ms. Manuel, Nguyen insists that the Plan may not recover funds that he received pursuant to underinsured motorists’ insurance.
Stated simply, I am convinced beyond cavil that the record evidence compels the conclusion that Humana not only has discretion to pursue subrogation and reimbursement on behalf of the Plan and thus has standing, but that the Plan is entitled to recover the sums obtained by Nguyen by virtue of underinsured motorists insurance, particularly when his retention of that sum would constitute nepotistic double-dipping at the expense of the Plan.[33] I am firmly convinced that reversing and remanding today for a redetermination of both standing and the merits — with predictably the same results — merely prolongs the resolution of this dispute, which I conclude has already been correctly decided by the district court. These are the reasons why I respectfully DISSENT.

.The implication of Footnote 1 to the panel majority’s opinion is based on flawed logic: Even if API’s policies and procedures might be deemed to trump those of Humana in the final analysis, that does not mean that Humana does not possess discretion — and thus fiduciary status — in the normal course of administering subrogation and recovery services under the express provisions of the Plan. Moreover, the panel majority fails to acknowledge that Section 2.1's statement that "the Plan Manager operates within a framework of the Plan’s management policies and practices” is followed by sections containing limiting language: “Accordingly, except as may otherwise be expressly provided herein, [Humana] is not a ... fiduciary____ [and] [e]xcepf with respect to duties expressly assumed hereunder, [Humana] is not responsible for maintaining the Plan in compliance with ERISA ...”

.' See Reich v. Lancaster, 55 F.3d 1034, 1047 (5th Cir. 1995) (citing Kyle Rys. v. Pac. Admin. Servs. Inc., 990 F.2d 513, 516 (9th Cir. 1993)).

. Cf. id. (recognizing that ”[a]n entity which. assumes discretionary authority or control over plan assets will not be considered a fiduciary if that discretion is sufficiently limited by a pre-existing framework of policies, practices, and procedures” (alteration in original) (quoting Useden v. Acker, 947 F.2d 1563, 1575 (11th Cir.1991)) (internal quotation marks omitted)).

. See, e.g., W.E. Aubuchon Co. v. BeneFirst, LLC, 661 F.Supp.2d 37, 52-53 (D.Mass.2009) (listing "investigation of subrogation claims” as an activity requiring "the exercise of substantial discretion”).

. See, e.g., Cataldo v. U.S. Steel Corp., 676 F.3d 542, 552 (6th Cir.2012) (reviewing plan documents to ascertain whether the union qualified as an ERISA fiduciary); Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 472-73 (7th Cir. 2007) (reviewing a series of contracts between the client and pharmaceutical benefits manager to determine whether the manager’s obligations rendered it an ERISA fiduciary); Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 64 (2d Cir.2006) (relying on the summary plan description's allocation of responsibilities to conclude that the plan’s administrator was a fiduciary under § 1002(21)(A)(iii)).

. The NCD is actually nothing more than a questionnaire — a 396-part instrument that "Humana [used] to draft the Summary Plan Description for the Plan and to administer benefits under the Plan during the period prior to the delivery of a final Summary Plan Description.” Like many a questionnaire, the NCD contains check-off boxes that describe a number of optional plan provisions from among which API could (and did) pick and choose only those that it wanted included in the Plan. Significantly, the record indicates that the NCD evanesced when the 2012 SPD became effective, permanently supplanting the NCD.

.Emphases supplied. The NCD spells out the Subrogation/Recovery provision: "Subrogation allows the Plan to 'stand in the shoes of the covered person and collect money from the responsible appropriate party'.... Reimbursement allows the Plan, by a contractual right, to recover the money the Plan paid on behalf of the covered person, when benefits are paid and the covered person recovered monetary damages from the responsible appropriate party. This can be by settlement, judgment or other manner.” Accordingly, Humana seeks reimbursement from Nguyen because he has already obtained funds from the responsible appropriate party or parties, viz., his insurance company, an underinsured motorist, the insurance company or companies covering that motorist, or some combination thereof.

. Underlining emphases supplied.

. Emphasis supplied.

. See Reich, 55 F.3d at 1047 (citing Am. Fed. of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S., 841 F.2d 658, 663 (5th Cir.1988)).

. Id. at 1049 (emphasis supplied). This does not require a history of decision-making; the scienter doctrine is not applicable. Rather, the authority to make actual decisions suffices.

. Am. Fed. of Unions, 841 F.2d at 663 (emphasis supplied). The panel majority makes much of the purported similarities between § 1002(21)(A) and ministerial functions as defined by the common law of trusts. I urge the district court on remand not to be distracted by the panel majority's smoke screen of resorting to the common law of trust and trustees. Several decades of evolving ERISA jurisprudence demonstrate a dramatic divergence from that beginning — ERISA fiduciaries and their duties have become sui generis. See Varity Corp. v. Howe, 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ("We recognize ... that we are to apply common-law trust standards bearing in mind the special nature and purpose of employee benefits plans.” (internal quotation marks and citation omitted)). More to the point, both common law trustees and ERISA fiduciaries might *1034 well employ legal counsel, CPAs, actuaries or the like to provide "ministerial functions,” but that is in no way comparable to the relationship between API and Humana in this case. It was Humana, one of the largest (if not the largest) providers of group healthcare plans in the country — both ERISA and nonERISA — that created and provided the Plan for API from provisions that API selected in a questionnaire, expressly reserving, among other things, Humana’s furnishing and performing the most "pro-active” subrogation and recovery services — as expressly selected by API. Thus it was Humana, not API, that “set up” the framework of policies, interpretations, rules, practices, and procedures for it to follow.

.Am. Fed. of Unions, 841 F.2d at 663 (emphasis supplied). I do not suggest, as the panel majority implies, that Reich limits ministerial functions to benefit' determinations; rather, my point is that Reich contemplates that a third-party manager need not possess absolute or final authority to qualify as an ERISA fiduciary — keeping in mind that our precedent requires that we construe the term "liberally.”

. Emphasis supplied.

. The panel majority further criticizes the district court for failing to address language in the PMA describing Humana as the Plan’s agent. But, this criticism does not account for the PMA's permissive language that "[Humana] may act as an agent of [API] to perform specific actions or conduct specific transactions.... ” (Emphasis supplied). And, as observed in Footnote 1, the panel majority fails to acknowledge that the same article providing that Humana "may” act as an agent contains limiting language that “except as may otherwise be expressly provided herein, [Humana] is not a ... fiduciary ... [and] [efxcept with respect to duties expressly assumed hereunder, [Humana] is not responsible for maintaining the Plan in compliance with ERISA....” (Emphases supplied).

. Although the panel majority defends its reasoning by claiming that it only suggests *1035 that the district court’s analysis was incomplete because it should have considered the factors contained in Department of Labor interpretive bulletin, 29 C.F.R. § 2509.75-5, before ruling in favor of Humana, I have located no case law that holds or even suggests that the district court is obligated to do so in every instance involving a question of ERISA fiduciary standing. Especially when, as here, the relevant plan documents identify Humana as the entity responsible for recovering subrogation and reimbursement on behalf of the Plan, and Nguyen has adduced no credible evidence suggesting otherwise, working through the factors contained in 29 C.F.R. § 2509.75-5 is simply repetitive.

.See Coleman v. Champion Int’l Corp./Champion Forest Prods., 992 F.2d 530, 533 (5th Cir. 1993) (noting that party seeking to establish standing under § 1132 must satisfy statutory definitions).

. Clark v. America’s Favorite Chicken, 110 F.3d 295, 297 (5th Cir.1997).

. It bears noting that Ms. Manuel works under Nguyen’s father, who is the CEO of API, a 100% family-owned company.

. The court may affirm summary judgment on any basis raised in the district court that is supported by the record. EEOC v. Simbaki, Ltd., 767 F.3d 475, 481 (5th Cir.2014) (citing City of Alexandria v. Brown, 740 F.3d 339, 350 (5th Cir.2014)).

.Nguyen's “logic” suffers from a flawed syllogism: Although the record does not make clear whether Nguyen recovered the funds from his underinsured motorists insurance policy or from the tortfeasor, or some from each, the verified complaint states that “Nguyen settled his claims relating to the April 14, 2012 accident with responsible third parties for approximately $275,000.00,” and Nguyen admitted to that in his Answer. The parties later stipulated and agreed that Nguyen would preserve $255,000 in settlement proceeds that he "received in connection with the injuries [he] suffered”; and he states in his appellate brief that he "secured funds from his underinsured motorist policy provider.” As the Reimbursement/Recovery provisions of the Plan expressly cover proceeds received pursuant to a Plan participant's underinsured motorists insurance policy, any inconsistency in the summary judgment record on this point is not material.

. Cooper v. Hewlett-Packard Co., 592 F.3d 645, 652 (5th Cir.2009) (citing Gosselink v. Am. Tel. & Tel., Inc., 272 F.3d 722, 726 (5th Cir.2001)). As noted in the majority opinion, standard summary judgment rules control in ERISA cases, meaning we review a district court’s grant of summary judgment de novo and apply the same standards as the district court.

. See Sunbeam-Oster Co., Inc. Grp. Benefits Plan for Salaried & Non-Bargaining Hourly Emps. v. Whitehurst, 102 F.3d 1368, 1373 (5th Cir.1996).

. Cooper, 592 F.3d at 651 (quoting Meditrust Fin. Servs. Corp. v. Sterling Chems. Inc., 168 F.3d 211, 214 (5th Cir.1999)) (internal quotation mark omitted).

. Wildbur v. ARCO Chem. Co., 974 F.2d 631, 638 (5th Cir.1992) (citing Jordan v. Cameron Iron Works, Inc., 900 F.2d 53, 56 (5th Cir. 1990)).

. I assume for the sake of argument, as did the district court, that the NCD constitutes the Plan despite evidence in the record that the NCD was supplanted by the 2012 SPD.

. Courts interpret ERISA plans “in an ordinary and popular sense as would a person of average intelligence and experience.” Wegner v. Standard Ins. Co., 129 F.3d 814, 818 (5th Cir. 1997) (quoting Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1452 n. 1 (5th Cir. 1995)) (internal quotation marks omitted); see also U.S. Airways, Inc. v. McCutchen, - U.S. -, 133 S.Ct. 1537, 1549, 185 L.Ed.2d 654 (2013) (“Courts construe ERISA plans, as they do other contracts, by looking to the terms of the plan as well as to other manifestations of the parties’ intent." (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)) (internal quotation marks omitted)).

. Although the plan text, and not the plan summary, ultimately controls the plan administrator's obligations, our precedent holds that (1) ambiguous plan language be given a meaning as close as possible to what is said in the plan summary, and (2) plan summaries be interpreted in light of the applicable statutes and regulations. Koehler v. Aetna Health Inc., 683 F.3d 182, 189 (5th Cir.2012) (citations omitted).

. Underlining emphasis supplied.

. See Wildbur, 974 F.2d at 638 (“Although the fact that an administrator’s interpretation is not the correct one does not in itself establish that the administrator abused his discretion, '[w]hen [his] interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior.’ ” (alterations in original) (quoting Batchelor v. Int’l Bhd. of Elec. Workers Local 861 Pension & Ret. Fund, 877 F.2d 441, 445 (5th Cir.1989))).

. See Fed.R.Evid. 201(b)(2) (“The court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.”).

. I acknowledge that Ftumana is entitled to retain a portion of the amounts it recovers via subrogation and recovery on behalf of the Plan.

. That the pater familias who runs the family-owned business would support (if not direct) the efforts of his minions to obtain a tax-free windfall of a quarter-million dollars for a family member at the expense of his company's faceless insurers is not surprising. But it is nevertheless wrong and — more to the point of this case — violative of both the letter and the spirit of the contracts that govern the relationship between the parties.